IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON BETTS, | ) | CASE NO. 1:11-cv-01107 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| TERRY A. TIBBALS, Warden | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Jason Betts ("Petitioner" or "Betts") filed this habeas corpus action pursuant to

28 U.S.C. § 2254 on May 31, 2011.  Doc. 1.  Betts asserts thirteen grounds for relief, which are

set forth below in Section II (D).  Doc. 1.  Respondent filed an Answer/Return of Writ (Doc. 6)

and Betts filed his Traverse (Doc. 10).

Betts challenges the constitutionality of his conviction and sentence in *State of Ohio v.

Jason K. Betts*, Case No. CR 451845 (Cuyahoga County).  Doc. 1; Doc. 6-1, Exhibit 4, pp. 59-60

(Exhibit 4).[1]  On June 27, 2006, following a first trial that resulted in a hung jury and a court

ordered mistrial on October 7, 2005 (Doc. 6-1, Exhibit 3, p. 30), a jury found Betts guilty of

aggravated murder with felony murder and firearm specification (Count Two) and aggravated

robbery with firearm specification (Counts Three and Four).  Doc. 6-1, Exhibit 3, pp. 19-20;

Doc. 6-1, Exhibit 4, p. 59.  Thereafter, the trial court sentenced Betts to life imprisonment

without the possibility of parole on Count Two, ten years on Count Three, ten years on Count

Four, with Counts Three and Four merged for sentencing purposes and with post release control

---

[1] Page number references refer to the page number for the cited ECF Doc.

as part of the sentence.  Doc. 6-1, Exhibit 4, p. 59.   The trial court also sentenced Betts to a total

of three years for all firearm specifications with the three year term for the firearm specifications

to be served prior to and consecutive with all other sentences imposed.  Doc. 6-1, Exhibit 4, p.

60.

   This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.[2]  For the reasons set forth below, the undersigned

concludes that Grounds One through Thirteen are procedurally defaulted, are not cognizable

and/or are without merit.  Accordingly, Betts's Petition for writ of habeas corpus (Doc. 1) should

be **DENIED**.

## I.  Factual Background

   In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).

The Ohio Eighth District Court of Appeals summarized the facts underlying Betts's conviction

as follows:[3]

> [*P4] A second trial to a death-qualified jury commenced on June 12, 2006. The
> state's evidence demonstrated that in the weeks preceding his death, the decedent
> [Reyes] drove a gold Buick Riviera with distinctive specialty "20 inch Polo" rims.
> At this time, he was also helping his friend Jeffrey Williams remodel Williams'
> mother's house.
>
> [*P5] On October 8, 2002, Reyes left his vehicle on Cantor Avenue and went with
> Williams to meet friends at a bar. Later that night, Reyes was driven back to his
> car. Trisha Smith and Tina Maynard spoke to Reyes. After a few minutes, Tina

---

[2] The case was initially referred to United States Magistrate Judge Nancy A. Vecchiarelli.  The case was
subsequently reassigned to the undersigned Magistrate Judge pursuant to General Order 2011-18.

[3] The facts are taken from the Eighth District Court of Appeals' October 18, 2007, decision.  *State of Ohio v. Betts*,
2007 Ohio App. LEXIS 4873 (Ohio Ct. App. Oct. 18, 2007); *see also* Doc. 6-1, Exhibit 1, pp. 1-9.

observed someone walking in a nearby alley. Reyes said, "Oh shit," and fled. The individual chased Reyes. Reyes slipped and fell and the other man caught Reyes by the back of the shirt, took out a gun and shot Reyes, killing him. Maynard then observed a man drive away in Reyes' car.

[*P6] Smith described the assailant as a dark complexioned African-American male, approximately 5'6" or 5'5", with dread locks or braids. Police recovered a 9 mm shell casing from the scene. A few hours later, police recovered Reyes' car while responded to a call that an automobile was being stripped on Parkview Avenue. The vehicle was missing both passenger side tires and the wheels on the driver's side appeared to be replacement wheels. The distinctive Polo rims had been removed. Police obtained fingerprints from the right front fender, three exterior windows and a CD case inside the car.

[*P7] Smith believed that she saw the man again at Reyes' wake. In the ensuing weeks, she looked at approximately twenty photographs for police but could not identify the assailant.

[*P8] On October 16, 2002, Jeffrey Williams received a telephone call from Norman Pomales. Following this phone call, Williams contacted investigators and investigators in turn identified a green Pontiac automobile owned by [Jessica] Randleman [Betts's girlfriend].

[*P9] By April 2003, police linked two of the fingerprints recovered from the right front fender of Reyes' car to defendant. The next month, Trisha Smith was shown a six-person photo array and indicated that defendant looked like the person but she could not be sure. Following a second photo array in April 2004, Smith identified defendant. That same month, Maynard identified defendant from a different six-person photo array but she stated that she could not be sure. At trial, Smith also identified defendant as the assailant.

[*P10] In March 2003, Houston Foster turned over to police a 9 mm weapon he had found in the outdoor grill at his home located at 1371 East 185th Street. Police later determined that defendant had been arrest at 1371 East 185th Street in March 2003. In May 2004, police determined that a Browning 9 mm weapon found in the grill at Foster's home fired the 9 mm casing found at the crime scene and that a live round found within the Browning 9 mm was the same make and manufacture of the casing found at the crime scene.

[*P11] Police located defendant hiding in a closet at his parents' home. He denied ever seeing Reyes or Reyes' car. Defendant stated that Randleman is his girlfriend.

[*P12] Defendant presented the testimony of Solomon Fulero, Ph.D. who testified that eye witness memories can be tainted by post-event information, that memories fade over time, that brief eye witness observations are less accurate

than observations involving longer exposure times, and that various factors including the presence of weapons and other stressful factors tend to render eye witness observations less accurate. In addition, identifications of individuals from a different race tend to be less accurate as same-race identifications. Finally, Fulero opined that the presentation of a six-person photo array yields less reliable identifications than a sequential presentation of photos.

[*P13] The defense also presented the testimony of Officer Edward Csoltko who arrested defendant at 1371 East 185th Street. According to Officer Csoltko, he reported to his dispatcher that the subject he was chasing was "possibly armed," and the report does not mention a gun but he believed that he did observe defendant to be armed during the pursuit. He conceded, however, that it was possible that a second individual involved in this incident could have been the person he observed with a weapon.

*State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶¶ 4-13 (Ohio Ct. App. Oct. 18, 2007); *see also* Doc. 6-1, Exhibit 1, pp. 1-9.

## II.    Procedural Background

### A.    State Conviction

#### 1.  Indictment

On May 14, 2004, a Cuyahoga County Grand Jury indicted Betts on two counts of aggravated murder with felony murder and three-year firearm specifications (Counts One and Two)[4] and two counts of aggravated robbery with one and three-year firearm specifications (Counts Three and Four).  Doc. 6-1, Exhibit 2, pp. 10-13.

#### 2.  Jury trials and sentencing

Betts's first jury trial resulted in a hung jury and the trial court ordered a mistrial on October 7, 2005.  Doc. 6-1, Exhibit 3, p. 30.  Betts's retrial commenced on June 12, 2006.  Doc. 6-1, Exhibit 3, p. 23.  On June 27, 2006, the jury returned a guilty verdict as to Counts Two,

---

[4] Count One stated, in part that, Betts "purposely and with prior calculation and design, caused the death of another, to-wit: David Reyes . . ."  Doc. 6-1, Exhibit 2, p. 10.  Count Two stated , in part, that Betts "purposely caused the death of another, to-wit: David Reyes, while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit Aggravated Robbery . . ."  Doc. 6-1, Exhibit 2, p. 11.

Three and Four.  Doc. 6-1, Exhibit 3, pp. 19-20; Doc. 6-1, Exhibit 4, p. 59.  The jury also returned a verdict of not guilty as to Count One.  Doc. 6-1, Exhibit 3, p. 19.

On July 5, 2006, the mitigation phase of Betts's trial commenced.  Doc. 6-1, Exhibit 3, p. 19.  On July 6, 2006, the jury returned a recommendation of life without possibility of parole.  Doc. 6-1, Exhibit 3, p. 18.  The trial court sentenced Betts to life imprisonment without the possibility of parole as to Count Two, ten years as to Count Three, ten years as to Count Four, with Counts Three and Four merged for sentencing purposes and with post release control as part of the sentence.  Doc. 6-1, Exhibit 4, p. 59.   The trial court also sentenced Betts to a total of three years for all firearm specifications with the three year term for the firearm specifications to be served prior to and consecutive with all other sentences imposed.  Doc. 6-1, Exhibit 4, p. 60.

**B.     Direct Appeal**

On August 17, 2006, Betts, with new counsel, filed a Notice of Appeal with the Eighth District Court of Appeals.  Doc. 6-1, Exhibit 5, pp. 61-62.  On March 16, 2007, in an Amended Brief, Betts presented the following twelve assignments of error:

**Assignment of Error I:**  The trial court denied appellant due process by denying, without conducting an evidentiary hearing, his motion for mistrial in his first jury trial on the basis of prosecutorial misconduct.

**Assignment of Error II:** The trial court erred in denying appellant's motion to suppress eyewitness identification and in permitting fundamentally unreliable identifications in violation of due process.

**Assignment of Error III:**  The trial court erred and violated defendant's confrontation rights under the Sixth Amendment by permitting the use of Jessica Randleman's prior testimony.

**Assignment of Error IV:**  Appellant's convictions are not supported by sufficient evidence as required by the due process clause.

**Assignment of Error V:**  Appellant's convictions are against the manifest weight of the evidence.

5

**Assignment of Error VI:**  Appellant's Fourteenth Amendment right to equal protection was violated by the state's use of its peremptory challenges to strike black jurors.

**Assignment of Error VII:**  Trial court erred in denying an in camera review of police report and failing to preserve the report for appellate review as required by Crim. R. 16 and Evid. R. 612.

**Assignment of Error VIII:**  Trial court's jury instruction on aggravated robbery was plainly erroneous and constituted a violation of appellant's due process rights.

**Assignment of Error IX:**  Defendant was denied the effective assistance of counsel when his attorney failed to object to an erroneous aggravated robbery instruction.

**Assignment of Error X:**  Appellant was denied his due process right to a fair trial as a result of prosecutorial misconduct.

**Assignment of Error XI:**  Appellant's Eighth and Fourteenth Amendment rights were violated when the trial court prohibited him from arguing residual doubt as a mitigating factor at the penalty phase.

**Assignment of Error XII:**  Trial court violated appellant's Fifth and Fourteenth Amendment rights to due process and to remain silent when it relied on improper considerations in sentencing the defendant.

Doc. 6-1, Exhibit 6, pp. 63-126.  On May 3, 2007, the State of Ohio filed its Brief.  Doc. 6-1, Exhibit 7, pp. 127-67.  On May 15, 2007, Betts filed his Reply Brief.  Doc. 6-1, Exhibit 8, pp. 168-81.  On October 29, 2007, the Eighth District Court of Appeals affirmed the judgment of the state trial court.[5]  Doc. 6-1, Exhibit 9, pp. 182-211.

On December 13, 2007, Betts, with counsel, filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Ohio Supreme Court.  Doc. 6-1, Exhibits 10-11, pp. 212-63.  In his Memorandum in Support of Jurisdiction, Betts presented the following propositions of law:

---

[5] The Eighth District Court of Appeals' decision was released on October 18, 2007, and journalized on October 29, 2007.  Doc. 6-1, Exhibit 9, p. 182.

**Proposition of Law I:**  The State cannot meet its burden of proving a witness's unavailability, as required by the rules of evidence and the Confrontation clause when it relies solely on a prosecutor's unsworn representations.

**Proposition of Law II:**  A defendant's objection that the State has failed to demonstrate unavailability of a witness is sufficient to preserve objections both to the manner and substance of the State's evidence of unavailability.

**Proposition of Law III:** The State commits a Batson violation when it uses its peremptory challenges, over the course of two trials, to strike only black jurors and when its purported "race-neutral explanation" applied to other jurors that it kept on the panel.

**Proposition of Law IV:**  A pre-trial identification procedure is unnecessarily suggestive when it involves showing eyewitness multiple simultaneous photo arrays including the defendant, when his appearance is altered in a manner consistent with the witnesses' description, and when the defendant is the only individual in the array consistent with the description.

**Proposition of Law V:**  An eyewitness identification is fundamentally unreliable when it involves a cross-racial identification of a stranger several years after a highly stressful event and when it is based on an exceedingly brief night-time observation.

**Proposition of Law VI:**  A prosecutor's repeated attempts to expose the jury to prejudicial information that he or she knew would never be presented or admitted requires a mistrial and bars subsequent retrial under State and Federal principles of Double Jeopardy.

**Proposition of Law VII:**  The "continuous transaction" test does not apply to the crime of aggravated robbery.

**Proposition of Law VIII:**  A trial court commits plain error when it instructs the jury that an individual commits aggravated robbery when the infliction of serious physical harm and/or use of a deadly weapon occurs as party of the sequence leading up to the theft offense.

**Proposition of Law IX:**  Defendant receives constitutionally ineffective assistance of counsel when trial counsel fails to object to a jury instruction which expands the scope of an offense and relieves the State of its burden of proving all the essential elements of the offense.

**Proposition of Law X:**  The State fails to present sufficient evidence of the identity of the assailant when that evidence depends upon an improper stacking of inferences.

**Proposition of Law XI:**  Prosecutorial misconduct violates a defendant's right to a fair trial when it involves argument that vouches for the credibility of the sole eyewitness and when the prosecutor uses his or her personal opinion to rebut a defense expert on eyewitness testimony.

**Proposition of Law XII:**  The trial court may not preclude a defendant from arguing residual doubt as a mitigating factor during the penalty phase of a death penalty trial when it permits the State to argue that the absence of doubt supports the imposition of death.

Doc. 6-1, Exhibit 11, pp. 214-63.  On March 26, 2009, the Ohio Supreme Court denied Betts's

leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

Doc. 6-1, Exhibit 12, p. 264.

## C.    Post-Conviction Proceedings

### 1.  Trial court proceedings regarding Betts's post-conviction petition

On May 17, 2007, Betts, proceeding *pro se*, filed a Motion to Vacate or Set Aside

Judgment of Conviction in the trial court ("post-conviction petition").  Doc. 6-2, Exhibit 13, pp.

1-19.  In his May 17, 2007, post-conviction petition, Betts argued that his trial counsel was

ineffective for failing to investigate his claimed alibi, fingerprints found on the victim's car, and

by not calling him to testify in his own defense.  Doc. 6-2, Exhibit 13, pp. 1-19.  Betts supported

his post-conviction petition with affidavits, one signed by Betts himself and one signed by

Jessica Randleman ("Randleman").  Doc. 6-2, Exhibit 13, pp. 17-19.  On May 29, 2007, the State

opposed Betts's post-conviction petition.  Doc. 6-2, Exhibit 14, pp. 20-25.

On September 14, 2007, Betts, now through counsel, filed a Motion for Leave to

Respond to the State's Opposition Brief.  Doc. 6-2, Exhibit 15, pp. 26-28.  Also, on September

14, 2007, Betts filed a Motion for Leave to Supplement Petition for Post-Conviction Relief (Doc.

6-2, Exhibit 16, pp. 29-35) wherein he requested leave to supplement his post-conviction petition

with an additional affidavit which was signed by Fernando Taylor ("Taylor") (Doc. 6-2, Exhibit

16, pp. 34-35).    The State filed a motion to dismiss Betts's request for leave to supplement his

post-conviction petition.  Doc. 6-2, Exhibit 17, pp. 36-40.  Betts filed a response to the State's

opposition (Doc. 6-2, Exhibit 18, pp. 41-47) and a response to the State's motion to dismiss

Betts's request for leave to supplement his post-conviction petition (Doc. 6-2, Exhibit 19, pp. 48-

51).  The trial court granted Betts's motion for leave to supplement his post-conviction petition.

Doc. 6-2, Exhibit 21, p. 53.

On January 12, 2009, without an evidentiary hearing, the trial court denied Betts's post-

conviction petition.  Doc. 6-2, Exhibit 22, pp. 54-65.  The trial court found that the affidavits of

Betts, Randleman and Taylor presented "conflicting accounts of the events upon which

Defendant relies as the basis for his claim of ineffective assistance of counsel" and were not

credible.   Doc. 6-2, Exhibit 22, p. 60, ¶ 3.   As such, the trial court held that Betts had not

"provided competent, relevant and material evidence *dehors the record*" such that his claims of

an alibi defense were barred by the doctrine of res judicata.  Doc. 6-2, Exhibit 22, p. 62, ¶ 8.

Further, the trial court found that the alleged failures of trial counsel involved "decisions relating

to the particular trial strategy employed by defense counsel" and the affidavits failed "to provide

credible evidence of facts sufficient for the Court to determine that defense counsel violated an

essential duty to Defendant which violation resulted in prejudice to Defendant."  Doc. 6-2,

Exhibit 22, p. 63, ¶ 9.  Thus, the trial court denied Betts's post-conviction petition.[6]  Doc. 6-2,

Exhibit 22, pp. 54-65.

---

[6] In the trial court's order denying Betts's post-conviction petition, the trial court also denied his request for
appointment of counsel and request for discovery.  Doc. 6-2, Exhibit 22, pp. 63-64, ¶¶ 10-11.

### 2.  Direct appeal of trial court's decision on Betts's post-conviction petition

On February 9, 2009, Betts, through new counsel, filed a notice of appeal of the trial

court's denial of his post-conviction petition.  Doc. 6-2, Exhibit 24, p. 83.  On July 22, 2009,

Betts filed his Brief wherein he asserted the following assignments of error:

> **Assignment of Error I:**  The doctrine of res judicata did not bar the claims set
> forth by appellant and the trial court's finding is not supported by the record and
> violates the 14th Amendment of the federal Constitution.
>
> **Assignment of Error II:**  An evidentiary hearing should have been conducted
> since Appellant supported his petition with three affidavits with evidence dehors
> the record that supported the relief sought and the failure to conduct such hearing
> violated R.C. 2953.21 and the Fourteenth Amendment of the federal Constitution.
>
> **Assignment of Error III:**  The trial court erred in failing to allow appellant to
> conduct discovery in violation of the Fourteenth Amendment of the federal
> Constitution and Ohio law.
>
> **Assignment of Error IV:**  The trial court's conclusion that trial counsel made a
> "strategic" decision to not investigate and present an alibi and not call the
> appellant to testify on his own behalf is not supported by the record and such
> strategy could not have been reasonable and counsel was therefore ineffective
> under the Sixth and Fourteenth Amendments of the federal Constitution.

Doc. 6-2, Exhibit 23, pp. 66-81.  The State filed its Brief.  Doc. 6-2, Exhibit 25, pp. 84-97.  The

Eighth District Court of Appeals affirmed the trial court's denial of Betts's post-conviction

petition. Doc. 6-2, Exhibit 26, pp. 98-102; *see also State v. Betts*, 2010 Ohio App. LEXIS 356

(Ohio Ct. of App. Feb. 11, 2010).[7]

On April 8, 2010, Betts, through counsel, filed a Notice of Appeal and a Memorandum in

Support of Jurisdiction with the Ohio Supreme Court.  Doc. 6-2, Exhibits 27-28, pp. 103-32.  In

his Memorandum in Support of Jurisdiction, Betts presented the following propositions of law:

---

[7] The Eighth District Court of Appeals' decision regarding Betts's appeal of the trial court's denial of his post-conviction petition was released on February 11, 2010 and journalized on February 22, 2010.  Doc. 6-2, Exhibit 28, p. 119.

**Proposition of Law I:**  The doctrine of res judicata does not bar the appellant's claims and the lower court's finding of res judicata is not supported by the record and violates the 14th Amendment of the federal Constitution.

**Proposition of Law II:**  An evidentiary hearing should have been conducted since the Appellant supported his petition with three affidavits with evidence dehors the record that supported the relief he sought and the failure to conduct such hearing violated R.C. 2953.21 and the Fourteenth Amendment of the federal Constitution.

**Proposition of Law III:** A court must allow appellant to conduct discovery in post conviction and adopt the federal standard for when discovery takes otherwise it violates the Fourteenth Amendment of the federal Constitution and Ohio law.

**Proposition of Law IV:**  The lower court's conclusion that trial counsel made a "strategic" decision to not investigate and present the alibi and not call the appellant to testify on his own behalf is not supported by the record and such strategy could not have been "reasonable" and counsel was therefore ineffective under the Sixth and Fourteenth Amendments of the federal Constitution.

Doc. 6-2, Exhibit 28, pp. 105-32.  On June 9, 2010, the Ohio Supreme Court declined

jurisdiction to hear Betts's appeal and dismissed his appeal as not involving any substantial

constitutional question.  Doc. 6-2, Exhibit 29, p. 133.

**D.     Federal Habeas Corpus**

On May 31, 2011, Betts, with counsel, filed his Petition.  Doc. 1.  He asserts the

following thirteen grounds for relief:

**Ground One:** The Sixth and Fourteenth Amendments of the federal Constitution were violated when Jessica Randleman's testimony from the previous trial was used in the second trial when her unavailability was not proven by sworn testimony and over the objection of the petitioner.

**Ground Two:** The State violates the Fourteenth Amendment of the federal Constitution and commits a <u>Batson</u> violation when it engages in a systematic and unconstitutional pattern of striking African American jurors. During both the first trail (which resulted in a hung jury) and the second trial (which resulted in conviction) every peremptory challenge used by the State was used to strike an African American juror.  Seven peremptory challenges in total were used to strike African American jurors.

**Ground Three:**  The admission of fundamentally unreliable eyewitness identifications violated the Due Process Clause of the Fourteenth Amendment of the federal Constitution and the eyewitness identification should have been suppressed.  The pre-trial identification procedure in this case were unnecessarily and impermissibly suggestive with respect to witness Trisha Smith.  She was the only witness to identify the petitioner.  Her identification was not reliable given the procedures used in this case which included a photo array where the petitioner's skin color was darkened to appear to be more consistent with the description of the suspect.

**Ground Four:**  Prosecutor misconduct in violation of the Fourteenth Amendment deprived petitioner of a fair trial when he told the jury that petitioner hid a gun while being chased by the police "that could tie him to a lot of stuff" when the prosecutor knew such statement would not come in to evidence and told the jury in opening and closing statements that the victim's "rims" were seen on the petitioner's car several days after the murder when he knew such evidence would not and did not come into evidence.  Such intentional misconduct bars retrial under the Double Jeopardy Clause of the federal constitution.

**Ground Five:**  The trial court's misstatement of the law of aggravated robbery violated the Fifth, Sixth and Fourteenth Amendments of the federal constitution by permitting the jury to find the petitioner guilty of aggravated robbery (thus felony murder) based on facts not contemplated by the Ohio aggravated robbery statute and expanding the definition of aggravated robbery and relieving the State from its burden of proof as to each essential element.

**Ground Six:**  The petitioner received the ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the federal Constitution when counsel failed to object to the incorrect aggravated robbery instruction presented in Ground Five.

**Ground Seven:**  There is insufficient evidence under the Fourteenth Amendment of the federal Constitution to convict petitioner of aggravated robbery and felony murder because the State failed to prove among other things that petitioner caused physical serious harm (or used a deadly weapon) "in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense".  Here, the infliction of serious harm took place after the car was stolen.

**Ground Eight:**  There was insufficient evidence under the Fourteenth Amendment of the federal Constitution to prove the petitioner was the shooter especially when based on improper identification testimony from witness Randleman and witness Smith.  The petitioner does not meet the description of the shooter and other circumstantial evidence does meet the sufficiency requirement of the Fourteenth Amendment.

**Ground Nine:** Prosecutor misconduct violated the Fourteenth Amendment of the federal Constitution when the prosecutor vouched for the credibility of the sole eyewitness, gave a personal opinion to rebut an expert on eyewitness identification, disparaged the petitioner, referred to evidence excluded by the trial court, misstated facts and argued facts outside the record.

**Ground Ten:** The doctrine of res judicata did not bar the petitioner's claims in state post conviction and such conclusions were not supported by the record and violated the Fourteenth Amendment of the federal Constitution. Trial counsel failed to investigate and present an alibi through the testimony of petitioner, Jessica Randleman and Fernando Taylor. The petitioner used the exact procedures authorized by Ohio law to present this issue and if these procedures are not recognized by the court then Ohio has not viable procedure in which to present these off the record claims concerning the Sixth and Fourteenth Amendments. See Poindexter v. Booker, 301 Fed. Appx/ 552, 2008 U.S. App. LEXIS 24221 (Nov. 28, 2008); Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005).

**Ground Eleven:** An evidentiary hearing must be conducted when three affidavits with evidence dehors the record supports the relief sought and the failure to conduct such a hearing violated Due Process under the Fourteenth Amendment of the federal Constitution.

**Ground Twelve:** There must be guidelines or a test for state courts to use in deciding whether to allow discovery in state post conviction otherwise the unbridled discretion violates the Fourteenth Amendment and is not subject to review. If the state does not allow post conviction discovery when petitioner has made "specific allegations before the court show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he . . . is entitled to relief" then the Fourteenth Amendment of the federal Constitution is violated. See Bracy v. Gramley, 520 U.S. 899, 909.

**Ground Thirteen:** The State court's decision that trial counsel made a "strategic" decision to not investigate and present the alibi and not call the petitioner to testify could not have been "reasonable" and counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution.

It cannot be "reasonable" trial strategy to not investigate an alibi. Defense counsel has an essential duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S. at 691 (1984). While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable", decisions made by counsel after less than thorough investigations "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In determining what is objectively unreasonable, the court conducts "an objective review of counsel's

13

performance, measured for 'reasonableness under prevailing professional norms' which includes a context dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time." Strickland at 688-89.

Doc. 1, pp. 7-12.

## III.     Law and Analysis

### Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.[8]  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal

---

[8] The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The one-year period of limitations is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The statute of limitations is not at issue in this case.

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## A.    Ground One is without merit and/or not cognizable

In Ground One, Betts argues that the trial court's evidentiary ruling that permitted the State to introduce Randleman's testimony from Betts's first trial during his second trial constituted a violation of his rights under the Confrontation Clause[9]  Doc. 1, p. 7; Doc. 10, pp. 9-11.

---

[9] Betts presented this argument in state appellate court as Assignment of Error III.  Doc. 6-1, Exhibit 6, pp. 88-90, and in the Ohio Supreme Court as Proposition of Law I.  Doc. 6-1, Exhibit 11, pp. 222-24.

"The Sixth Amendment's Confrontation Clause provides that, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).  In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what common law required: unavailability and a prior opportunity for cross-examination."  *Id.* at 68.  The Supreme Court has addressed the issue of witness unavailability in the context of the Confrontation Clause and has indicated that "a witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."  *Hardy v. Cross*, 132 S.Ct. 490, 493 (2011) (quoting *Barber v. Page*, 390 U.S. 719, at 724-25 (1968)); *see also Ohio v. Roberts*, 448 U.S. 56 (1980) (addressing the question of witness unavailability and reiterating that "a witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial") (quoting *Barber*, 390 U.S. at 724-25, with emphasis supplied).   "As with other evidentiary proponents, the prosecution bears the burden of establishing" that a witness is unavailable despite good-faith efforts to secure the witness's appearance.  *Roberts*, 448 U.S. at 74-75.  "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness."  *Hardy*, 132 S.Ct. at 494 (citing *Roberts*, 448 U.S. at 74).

Betts does not contend that he did not have a prior opportunity to cross-examine Randleman.[10]  Rather, he claims that, because the State did not present sworn testimony to support its argument that Randleman was unavailable at the time of his second trial as required by Ohio Evidence Rule 804, the State failed to meet its burden of demonstrating unavailability

---

[10] Randleman's testimony in the first trial was subject to cross-examination.  Doc. 6-9, Exhibit 41, pp. 278-83.

under the Confrontation Clause.  Doc. 10, pp. 9-10.  More particularly, Betts argues "no deference is owed the state court who fails to follow the requirement that sworn testimony be offered in support of a claim of 'unavailability.'" Doc. 10, p. 10.  However, although the prosecution bears the burden of demonstrating 'unavailability,' Betts does not identify the clearly established federal law that provides that the prosecution must present sworn testimony to demonstrate that reasonable good-faith efforts have been made to secure a witness's appearance nor does he demonstrate how the state court's determination was an unreasonable application of clearly established federal law.[11]

As discussed above, under clearly established federal law, a witness will not be deemed 'unavailable' unless the prosecution has made good-faith efforts to secure the witness's presence. *Hardy*, 132 S.Ct. at 493.  The state appellate court applied this clearly established federal law when it addressed Betts's Confrontation Clause assignment of error and concluded that the State made a reasonable good-faith effort to secure Randleman's appearance.  More specifically, it stated:

> [*P44] In this matter, Randleman was under subpoena and a bench warrant was issued for her appearance at trial but she was absent from the proceedings. The prosecuting attorney was unable to procure her appearance and he played a voice mail message from Randleman for the trial court in chambers in which Randleman indicated that she had received her subpoena and was aware of the court date but expressed notice, transportation and other issues. In another phone call to the attorney's personal cell phone, she indicated that she would be available on Tuesday and needed a ride. The prosecutor then related that the Elyria Police

---

[11] To the extent that Betts's claim is based on the state court's evidentiary ruling under Ohio Evidence Rule 804, it is not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted).  Betts has not argued nor demonstrated that the state court evidentiary ruling amounted to a fundamental miscarriage of justice or a violation of his right to due process.  Thus, Betts's claim of state law error is not cognizable in federal habeas corpus.

and Sheriff's Deputies had gone to her home on numerous times to locate her, and spoke to a woman taking care of Randleman's children who stated that she did not know when Randleman would return. The record supports the trial court's finding that the state did make a reasonable good-faith effort, including numerous attempts by law enforcement, to secure her appearance. *Cf. State v. Smith* (1990), 49 Ohio St.3d 137, 551 N.E.2d 190.

Doc. 6-1, Exhibit 9, pp. 197-98; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶ 44 (Ohio Ct. App. Oct. 18, 2007).[12]

Betts has not shown that the state court's determination regarding the admissibility of Randleman's testimony from the first trial at the second trial was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[13] *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011); *see also Peak v. Webb*, 673 F.3d 465, 474 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 931 (2013) (although "not convinced that the opportunity to call a witness, as opposed to the opportunity to immediately cross-examine a witness, satisfies the Confrontation Clause," the court, in recognition of the strictures of AEDPA, affirmed the state court's determination that the petitioner's Confrontation Clause rights were not violated because there was a possibility for fairminded disagreement on the issue).

---

[12] In reaching its decision that the State demonstrated good-faith efforts, the Eighth District Court of Appeals acknowledged that the state's evidence was not under oath but noted that defense counsel did "not appear to have objected to the informal chambers proceedings." Doc. 6-1, Exhibit 9, p. 198.  As noted above, to the extent that Betts's claim is based on an error of state law, a claim of state law error is not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini*, 526 F.3d at 897.  Since Betts has not demonstrated that the state court evidentiary ruling amounted to a fundamental miscarriage of justice or a violation of his right to due process, Betts's claim of state law error is not cognizable in federal habeas corpus.

[13] As also found by the state court of appeals, "[i]n any event, . . . admission of this evidence was harmless beyond a reasonable doubt in light of the actual evidence linking defendant to the home at 1371 East 185th Street and linking the murder weapon to this address, the evidence of defendant's fingerprints on Reyes' car, and the identification evidence" (Doc. 6-1, Exhibit 9, p. 198).  Betts attempts to demonstrate that this alternative finding of harmless error was based on an unreasonable determination of the facts.  Doc. 10, p. 10.  However, other than arguing that Randleman's testimony included testimony that the jury relied upon, Betts does not indicate how the state court's determination was unreasonable.  Doc. 10, p. 10.

For the reasons set forth herein, Betts's claim for federal habeas relief under Ground One is without merit and/or not cognizable and should be denied.

**B.      Ground Two is without merit**

In Ground Two, Betts argues that the State's use of peremptory challenges to allegedly exclude African American jurors from the jury violated his federal constitutional rights and constituted a *Batson* violation.[14]  Doc. 1, p. 7; Doc. 10, pp. 11-14 (relying on *Batson v. Kentucky*, 476 U.S. 79 (1986)).  Betts's *Batson* claim relates to prospective juror Candace Jeffries ("Jeffries").[15]  Doc. 10, p. 11; Doc. 6-15.  Following the State's use of a peremptory challenge on prospective juror Jeffries to excuse her from the venire during the second trial, Betts made a *Batson* objection.[16]  Doc. 10, p. 11; Doc. 6-15, Exhibit 47, p. 160.  For the reasons set forth below, Ground Two is without merit.

### *Batson* standard

In *Batson*, the United States Supreme Court determined that, during jury selection, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  476 U.S. at 89.  The United States Supreme Court set forth a three-part test for analyzing a *Batson* challenge.  *Id.* at 96-98; *U.S. v. Lawrence*, --- F.2d ---, 2013 WL 5716133, *48 (6th Cir. 2013).

---

[14] Betts presented this argument in state appellate court as Assignment of Error VI.  Doc. 6-1, Exhibit 6, pp. 97-99, and in the Ohio Supreme Court as Proposition of Law III.  Doc. 6-1, Exhibit 11, p. 224.

[15] Jeffries is spelled "Jefferies" in the trial transcript but spelled "Jeffries" in the Eighth District Court of Appeals' decision as well as in Betts's and the State's briefing before this Court.

[16] Although Betts states that every peremptory challenge used by the State in the first and second trial was used against an African American juror, Betts does not identify the seven jurors nor provide the Court with citations to the record to support his statement.  Doc. 10, p. 11.  Additionally, as discussed further below, evidence of removal of members of the defendant's race may serve to raise an inference of purposeful discrimination but the burden then shifts to the prosecutor to demonstrate a neutral reason.  *Batson*, 476 U.S. at 94-97.

First, a defendant who asserts a *Batson* challenge must make a prima facie case of purposeful discrimination in the prosecutor's selection of the jury. *Id.* at 93-94, 96-97.  "To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."  *Id.* at 96 (internal citations omitted).  Relying on "these facts and any other relevant circumstances," the defendant must "raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."  *Id.* at 96.

Second, "[o]nce the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."  *Batson*, 476 U.S. at 97. "The prosecutor must articulate a neutral explanation related to the particular case to be tried."  *Id.* at 98.  However, "the prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause."  *Id.* at 97.

Third, once the state has presented its explanation for challenging a black juror, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination."[17]  *Batson*, 476 U.S. at 98.  The Court noted that a trial judge's determination of whether there has been purposeful discrimination "largely will turn on evaluation of credibility."  *Id.* at 98, n. 21 (internal citations omitted).  Thus, "a reviewing court ordinarily should give those findings great deference."  *Id.*; *see also Hernandez v. New York*, 500 U.S. 352, 365 (1991) ("[a]s with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within the trial judge's province.") (internal citations and quotations omitted).

---

[17] "The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim." *Johnson v. California*, 545 U.S. 162, 171 (2005).

**Federal habeas review of *Batson* claim**

A *Batson* claim presents a mixed question of law and fact.  *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *see also Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009).  Thus, federal habeas review focuses on whether the state court decisions constituted an unreasonable application of Supreme Court precedent.  *Id.*  However, "the question of whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact."  *Id.* (quoting *Hernandez*, 500 U.S. at 367) (internal quotations omitted); *see also Braxton*, 562 F.3d at 458 (quoting *Lancaster*, 324 F.3d at 429).  Thus, a federal habeas court must also evaluate whether the state court's determination was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Rice v. Collins*, 546 U.S. 333, 339 (2006).   In other words, a federal habeas court looks at whether it was "unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge."  *Id.*  Under AEDPA, state court factual findings are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.[18]  *Id.* (citing 28 U.S.C. § 2254(e)(1)).

**Betts's *Batson* claim**

During his second trial, Betts made a *Batson* objection to the prosecutor's peremptory challenge of prospective juror Jeffries.  Doc. 6-15, Exhibit 47, p. 160.  After consideration of arguments by the prosecutor and defense counsel, the trial court overruled Betts's *Batson* objection.  Doc. 6-15, Exhibit 47, pp. 160-68.

At trial, the prosecutor challenged prospective juror Jeffries and the following sidebar discussion occurred:

---

[18] In *Rice,* the Court noted that the parties disagreed about whether and when 28 U.S.C. § 2254(e)(1)'s presumption applied but also stated that, even if only 28 U.S.C. § 2254(d)(2) applied, the state court's decision was not an unreasonable determination of the facts in light of the evidence presented in state court.  *Rice*, 546 U.S. at 339.

MR WATSON:        At this time we would like to ask the State of Ohio to state the basis for the challenge.  Batson.  This is the second African-American juror that has been excused.

There have been a number of jurors who have expressed some concerns about continued jury service, so I think she's like other similarly situated jurors in that she would prefer not to be on the case, but if she's willing to follow the law, there is nothing in her background that would indicate she couldn't serve as a juror in this case and I think that the State of Ohio at this point has to state a race neutral reason for its excuse.

MR. MACK:        In addition to that, I would like to indicate that juror number five just indicated that she did not want to be here because of vacation. Clearly, the State could have exercised that peremptory with that jury.

THE COURT:        State's reason?

MR. MAHONEY:        I think under the Batson rules, in order for the Court to make a finding that first -- the peremptory challenge was used in a racially discriminatory process, you would have to find first that she's a member of the class.  I concede that.

You also have to consider all the relevant circumstances and all the questioning, including Witherspoon, in deciding whether or not we are using this in a racially discriminatory manner.  Then you have to discover whether there is a pattern of strikings against minorities.

Before you do that, the State is not required to give an explanation, and I'm using the case of State versus Pennington, which ironically was the case I prosecuted in front of Judge Boyco, and I made the mistake of offering a reason prior to the Court making that finding.

MR. WATSON:        If I can interject, this is the second African-American that has been excused.  I think there is a pattern.

THE COURT:        This is the second African-American juror that has been excused by the State, and given the responses of this juror and of other jurors in similar situations, I believe that there is cause necessary for the State to place a reason on the record for the desire to excuse this juror.

MR. MAHONEY:        If I could, first I'll respond with my thoughts. Then, since Ms. Carr did the Witherspoon, I'll ask her to be able to respond.  First of all, none of the other jurors said – not once, not twice, but three times this juror said she didn't want to be here.  It's different when you have a vacation or a family schedule or children are sick.  They didn't say they didn't want to be here once. This juror said it three times.

Then this juror said she had a problem putting people in jail, bringing up the subject of punishment, even though I presume this was discussed in the first phase, the only issue is guilt or non-guilt of the defendant.  There is no way that any prosecutor or any Court in this building that I know of would keep a juror who says I couldn't do it because I couldn't put somebody away.

When you follow up with questions will you follow the law, when is the last time that this Court or any counsel at the sidebar had a juror say I couldn't follow the law.  They always say they'll follow the law, so her answers are not significant.

I ask that Ms. Carr be permitted to speak.

MS. CARR:            Your honor, if it pleases the Court, had Mr. Praskavich, juror number 8, showed up this morning, he would have been my next challenge.  He is not African-American; he is white, your Honor.  So actually the State waived its third challenge because he was not here.

As it relates to Ms. Jefferies, the Court will recall even during the Witherspooning process, I expressed some reservations about Ms. Jefferies, her non-committal.  She changed her position as it relates to her ability to sit in a death penalty case.  And her answer, she said she couldn't do it, even in her written responses, I think she said she was non-committal, didn't know about things of that nature.  Then when you spoke to her after indepth inquiry, she said, okay, I can do it; and then with defense counsel, I don't know.  So she was wavering back and forth.  It has nothing to do with her race.  It has everything to do with – it has everything to do with her saying she didn't want to be here.  She basically said she couldn't sit in judgment of other, and she echoed that during the Witherspooning process.  If you're a juror on any type of case, you do have to sit in judgment of another.  This potential juror said she couldn't do that, she was not comfortable with that.  It's unrelated to vacation schedule, but it has nothing to do with her race, but her views.

MR. MAHONEY:      May I? The Court should also take note that juror number 12 is African American, and the State passed on him as well.  And I would point out that the law in this regard, without getting too long winded, the critical question is whether the trial judge resolved whether or not the explanation should be believed and whether or not the explanation is race neutral, and we have expressed a race neutral reason.

Lastly, in Pennington, Judge Boyco made a comment in regards to the familiarity with the prosecutor at issue and he noted that the prosecutor had tried cases in his room and found him to be a fair man.  The Court of Appeals said in the Pennington case the Judge further discussed the credibility of the State's counsel, which the Court must take into consideration.  I ask you to take into

consideration how Ms. Carr and myself have handled ourselves through the course of this trial the first time as well as this time.  This is a race neutral reason.

The law does not require that we show that it justify that it -- we don't have to show right now cause.  We just have to show -- I ask if you want to review if you want the highlighted portion of the Pennington case --

MS. CARR:          And for the record, I am African-American, so I do fit in the same category and these opinions are based on my reactions with the prospective jurors during Witherspooning and here in my questioning today.  Thank you.

MR. MACK:          If I may, as it relates to the last comment -- I think the Court has addressed whether or not Ms. Carr represents the State of Ohio.  It doesn't matter whether she's black or white, she can still have the same designs, so that's irrelevant.

Unfortunately, Ms. Carr made the mistake of rehabilitating juror number 2.  She began out -- set out to indicate that she could not -- did not want to do some of these things, and then every subsequent response was I can follow the law.  If I prove my case beyond a reasonable doubt what finding would you make.  She said I would make a finding of guilty.  She responded to all of those questions.

For this Court to determine whether or not it's race neutral you only to look, go back to number five.  Her response to question number 69 is my feelings on the death penalty is that you do not need to justify death with death.  Arguably the State should have excused juror number five before two.  This defendant is entitled to a fair cross section and fair representation of the community here.  That's not going to happen if they continue to strike out African-American jurors for the exact same reasons.  And interestingly enough, it was Pinky Carr who made that strike.

MR. MAHONEY:     I would point out again juror number 12 is African-American.

Mr. Mack in his last questions said do you want to be here.  She said no.  How can anyone keep her.  No other juror --

MR. MACK:          How many times did Mr. Mahoney ask juror number 5 -- he asked the same questions.

THE COURT:        I think I heard enough.  There are some reasons here, race neutral, for excusing Ms. Jefferies, seated in seat number 2.  Therefore, I'm going to allow here to be excused based upon the State's peremptory challenge over the defense's objection.

Doc. 6-15, Exhibit 47, pp. 160-68.

On appeal, the Eighth District Court of Appeals affirmed the trial court's ruling and stated:

> [*P63] For his sixth assignment of error, defendant asserts that the State of Ohio violated his constitutional rights to equal protection by using its preemptory challenges to strike African-American jurors.
>
> [*P64] In *Batson v. Kentucky* (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges in a discriminatory manner to exclude potential jurors solely on account of their race. *Batson* created a three-part test for determining whether a prosecutor's use of a peremptory challenge is racially motivated. First, a defendant must make a prima facie showing of intentional discrimination by demonstrating that the state has used peremptory challenges to exclude potential jurors on the basis of race. Id. at P31. The defendant must point to facts and relevant circumstances which raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. Id.; see, also, *State v. Jordan,* 167 Ohio App.3d 157, 2006 Ohio 2759, 854 N.E.2d 520, citing *Batson.*
>
> [*P65] Once a defendant makes a prima facie case of discrimination, the burden shifts to the state to provide a race-neutral explanation for the peremptory challenge. Id., citing *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L. Ed. 2d 395. "The state's explanation need not rise to the level of a 'for cause' challenge; rather, it need only be based on a juror characteristic other than race and not be pretextual." Id. The issue is the facial validity of the prosecutor's explanation; unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *See Purkett v. Elem* (1995), 514 U.S. 765, 767-768, 115 S. Ct. 1769, 1771, 131 L.Ed.2d 834, quoting *Hernandez v. New York*, supra.
>
> [*P66] The court's finding that the state had no discriminatory intent in excluding the juror will not be reversed unless it is clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St. 3d 577, 582, 589 N.E.2d 1310, 1313.
>
> [*P67] In this matter, the state used a preemptory to strike Juror Jeffries, an African-American. The state explained that she stated that she did not want to be there, (see Tr. 3433, 3438), and she had a problem putting people in jail. This was a race-neutral explanation, and there was no showing of pretext. Another African-American remained on the panel. We find no error in connection with this preemptory challenge.

Doc. 6-1, Exhibit 9, pp. 202-03; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶¶ 63-67 (Ohio Ct. App. Oct. 18, 2007).

Betts's federal habeas claim presents a mixed question of law and fact. *Lancaster*, 324 F.3d at 429; *see also Braxton*, 561 F.3d at 458.  Betts's argument that the prosecutor's asserted race neutral reasons for excusing prospective juror Jeffries were not credible (Doc. 10, pp. 11-12) raises the question of whether the prosecutor intended to discriminate on the basis of race in challenging prospective juror Jeffries.  As discussed above, the state court's determination of that question is a factual determination that is presumed correct unless rebutted by clear and convincing evidence. *Lancaster*, 324 F.3d at 429; *see also Braxton*, 561 F.3d at 458; *see also* 28 U.S.C. § 2254(e)(1).  Betts fails to present clear and convincing evidence.  Betts's reliance on the State's purported use of a total of seven peremptory challenges between the two trials to rebut the presumption of correctness of the trial court's factual determination is unpersuasive.  Betts does not direct this Court to the factual support for that claim, he does not provide a breakdown of the number of peremptories used by the State in the first trial and the number used in the second trial, nor does he assert that he raised *Batson* challenges to those other peremptories. Further, while evidence of removal of members of the defendant's race may serve to raise an inference of purposeful discrimination, once such an inference is raised, the burden then shifts to the prosecutor to demonstrate a neutral reason. *Batson*, 476 U.S. at 94-97.  Here, the trial court considered the fact that prospective juror Jeffries would be the second African-American excused by the State and proceeded to the second step of the *Batson* inquiry.  Doc. 6-1, Exhibit 47, p. 162.  In the final analysis, the trial court concluded that the State's race neutral reason was credible and overruled Betts's *Batson* challenge.  Doc. 6-1, Exhibit 47, p. 168.

Betts's arguments that the prosecutor's reasons for challenging prospective juror Jeffries were pretextual are similar to those he presented to the trial court, i.e., that other jurors expressed stronger feelings about the death penalty. Doc. 10, p. 11; Doc. 6-15, Exhibit 47, pp. 161, 167. Betts again does not direct this Court to where in the record his claims are factually supported. For example, Betts makes vague references to hesitancy shown by other jurors regarding serving as a juror but provides no specifics as to the reasons for their hesitancy.  Doc. 10, p. 11.  At trial, in response to the defense's claim that there were other jurors who expressed similar concerns over jury service, the prosecutor indicated that, unlike those other jurors, prospective juror Jeffries indicated three times that she did not want to serve and she, unlike other jurors, gave no reason for not wanting to serve, i.e., she didn't express child care or family scheduling concerns. Doc. 6-15, Exhibit 47, pp. 162-63.

Being presented with the same arguments that Betts presents here and having the opportunity to assess firsthand the prosecutor's demeanor and the credibility of the prosecutor's stated race neutral reasons for using a peremptory challenge to excuse prospective juror Jeffries, the trial court overruled Betts's *Batson* objection.[19]  Betts has not rebutted by clear and convincing evidence the state court's factual determination. Nor has Betts demonstrated that the state court's decision was unreasonable in light of the evidence presented in state court such that federal habeas relief would be warranted under 28 U.S.C. § 2254(d)(2).  Even where "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . habeas review . . . does not suffice to supersede the trial court's credibility determination." *Braxton*, 561 F.3d at 463 (quoting *Rice*, 546 U.S. at 341-42).

---

[19] "There is no clearly established federal law issued by the Supreme Court mandating that the trial court undertake specific fact-finding exercises prior to rejecting a *Batson* challenge." *See Glenn v. Eberlin*, 2010 WL 750152, *16 (N.D. Ohio Feb. 26, 2010).

Betts also argues that the exercise of even one peremptory challenge in a purposefully discriminatory manner violates equal protection and the state court of appeals unreasonably applied *Batson* when it gave significance to the fact that another African American remained on the jury.  Doc. 10, pp. 11-12.  However, the Eighth District Court of Appeals analyzed Betts's *Batson* claim under the three-part inquiry established in *Batson* and the state appellate court's application of *Batson* was not an unreasonable application of clearly established federal law.  In applying *Batson*, the Eighth District Court of Appeals reviewed the prosecutor's reasons, i.e., that prospective juror Jeffries did not want to be on the jury and had problems putting people in jail, and concluded that those stated reasons were race-neutral and that there was no showing of pre-text.  Doc. 6-1, Exhibit 9, pp. 203.  While the Eighth District Court of Appeals noted that an African-American had remained on the panel, that was not the state appellate court's sole basis for its decision to affirm the trial court's *Batson* ruling.  *Cf.  Lancaster*, 324 F.3d at 435 (indicating that, "*without more*, the prosecutor's decision to select a subsequent African–American juror from the venire does nothing to cure the wrong committed under *Batson* in excluding Bowden because of his race.")  (emphasis supplied).  Further, to the extent that Betts relies on *Johnson v. California*, 545 U.S. 162 (2005) to argue that the state court unreasonably applied clearly established federal law when "it gave significance to the fact that 'another African American remained on the panel" (Doc. 10, p. 12), his reliance thereon is misplaced. The issue presented in *Johnson* concerned the scope of the first of the three *Batson* steps. *Johnson*, 545 U.S. at 168.  The question before the Court in *Johnson* was "whether *Batson* permit[ted] California to require at step one that 'the objector must show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias.'"  545 U.S. at 168.  The trial court in the *Johnson* case had not required the state to

explain its reasons for its use of peremptory challenges against prospective black jurors.  *Id* at 165.  In contrast, here, the trial court concluded that Betts had made the requisite showing under step one of *Batson* regarding prospective juror Jeffries and proceeded to step two and required the State to offer its reasons for using the peremptory.  Doc. 6-1, Exhibit 47, p. 162.

As demonstrated, Betts has not shown that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  Accordingly, Betts's claim for federal habeas relief under Ground Two is without merit and should be denied.

**C.  Ground Three is without merit**

In Ground Three, Betts asserts that the pre-trial identification procedures used in the case were unnecessarily and impermissibly suggestive with respect to witness Trisha Smith ("Smith") in violation of his constitutional right to due process.[20]  Doc. 1, pp. 7-8; Doc. 10, pp. 14-18.  He also asserts that Smith's identification was not reliable.  Doc. 1, pp. 7-8; Doc. 10, pp. 14-18.  Smith was 16 years old at the time David Reyes was shot and killed.  Doc. 6-17, Exhibit 49, p. 163.

Tina Maynard ("Maynard"), 12 years of age at the time (Doc. 6-17, Exhibit 49, p. 226), was with Smith on the night that David Reyes was shot and killed (Doc. 6-17, Exhibit 49, pp. 219-26).[21]  During the second trial, Maynard made an in-court identification of Betts on direct

---

[20] Betts presented this argument in state appellate court as Assignment of Error II, Doc. 6-1, Exhibit 6, pp. 83-88, and in the Ohio Supreme Court as Proposition of Law V.  Doc. 6-1, Exhibit 11, p. 225-26.

[21] Maynard, as an eyewitness, also viewed photo arrays in connection with the investigation into Reyes' death (Doc. 6-17, Exhibit 49, p. 228; Doc. 6-18, Exhibit 50, pp. 81, 85-86, 88) and testified at both trials (Doc. 6-9, Exhibit 41, pp. 4-54; Doc. 6-17, Exhibit 49, pp. 216-74). During the first trial, Maynard did not make an in-court identification of Betts.  Doc. 6-9, Exhibit 41, pp. 36-37.

examination.[22]  Doc. 6-17, Exhibit 49, pp. 232-33.  On redirect, Maynard stated that she was not

sure of her identification.  Doc. 6-17, Exhibit 49, pp. 267-68.  On habeas review, Betts asserts

that only Smith identified him as the shooter.  Doc. 10, p. 15.  He does not challenge Maynard's

eyewitness identification testimony.

To be entitled to relief on a claim that a petitioner's due process rights were violated

based on identification testimony a petitioner must demonstrate that the identification was based

on unnecessarily suggestive identification procedures that may have led to an irreparable

mistaken identification.  *Stovall v. Denno*, 388 U.S. 293, 302 (1967).  Use of pretrial

identification by photographs is not prohibited and will not be deemed a constitutional violation

without a showing that "the photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

*Simmons v. U.S.*, 390 U.S. 377, at 384 (1968).  In *Manson v. Brathwaite*, the Supreme Court

found that *Stovall* and *Biggers*, did not, singly or together, establish a strict exclusionary rule or

new standard of due process" for identification testimony. 432 U.S. 98, 113 (1977).  The Court

made clear that, even where an identification procedure is suggestive, "reliability is the linchpin

in determining the admissibility of identification testimony." *Id.*  at 114.   Thus, even where there

are unnecessarily suggestive identification procedures, identification testimony need not be

excluded when the identification testimony is nonetheless reliable.  *Id.*  The Court in *Manson*

reiterated factors to be considered when determining the reliability of identification testimony.

432 U.S. 98, 114 (1977) (relying on the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199-

200 (1972)).  Those factors include: "[1] the opportunity of the witness to view the criminal at the

---

[22] On cross-examination, Maynard testified that she did not identify Betts during the first trial because she was
scared (Doc. 6-17, Exhibit 49, pp. 240) and her testimony suggested that she did not know who the shooter was
(Doc. 6-17, Exhibit 49, p. 261).  During redirect Maynard acknowledged that, when viewing a photo array, she
identified someone as looking kind of like the shooter but was not entirely sure.  Doc. 6-17, Exhibit 49, pp. 272-73.

time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description of

the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time

between the crime and the confrontation."  *Id.*  Thus, to demonstrate a due process violation

based on the admission of identification testimony, a defendant must demonstrate that the

identification procedure was unnecessarily suggestive and unreliable. *Biggers*, 409 U.S. at 199;

*Manson*, 432 U.S. at 114.

After considering the evidence and the totality of the circumstances surrounding Trisha

Smith's identification of Betts, the Eighth District Court of Appeals found no merit to Betts's

assignment of error.  The Eighth District Court of Appeals stated, in part:

> [*P37] In this matter, we cannot conclude that the trial court erred in denying the
> motion to suppress.[23] The evidence demonstrated that immediately following the
> shooting, Smith described the assailant as a dark complexioned African-American
> male, approximately 5'6" or 5'5", with dread locks or braids. Smith believed that
> she saw the man again at Reyes' wake. In the ensuing weeks, she looked at
> approximately twenty photographs for police but could not identify the assailant.
> In May 2003, she was shown a six-person photo array and indicated that
> defendant looked like the person but she could not be sure. All of the foregoing
> strongly suggests that Smith's identification is instead the result of observations at
> the time of the crime. Moreover, there is nothing to indicate that the identification
> procedure was unnecessarily suggestive. A six-person black and white photo
> array was presented. The men have comparable facial hair, and hair styles. We
> cannot accept defendant's claim that his complexion is darker than the others so as
> to isolate his identity and we also reject defendant's contention that his photo is
> the only one consistent with Smith's description. The photo array was well-
> constituted and not impermissibly suggestive as to give rise to a very substantial
> likelihood of irreparable misidentification.

Doc. 6-1, Exhibit 9, pp. 195-96; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶ 37 (Ohio

Ct. App. Oct. 18, 2007).

Betts does not dispute that the court of appeals correctly stated the clearly established

federal law. However, Betts claims that the Eighth District Court of Appeals unreasonably

---

[23] The trial court denied Betts's motion to suppress the eyewitness identifications after conducting a hearing on his
motion to suppress.  Doc. 6-1, Exhibit 3, p. 44; Doc. 6-3, Exhibit 35, pp. 103-66.

applied that law and that its decision resulted from an unreasonable determination of the facts based on the evidence.  Doc. 10, pp. 14-18.

Betts asserts that, in the 2004 six person photo array,[24] he is the only one with braids and a dark complexion.  Doc. 10, p. 16.  Thus, he asserts that the state court made an unreasonable determination that the photo array was not impermissibly suggestive.  To support his argument, Betts asserts that he is "tall, skinny, medium complexion with short braids."  Doc. 10, p. 15.  He contends that three of the six photographs should be eliminated because the individuals had light complexions; one should be eliminated because the individual did not have braids coming down his back; and one should be eliminated because the individual had distinctive braids with large beads not described by Smith.  Doc. 10, p. 16.   Thus, he claims that his photo was the only one in the photo array that came close to meeting Smith's description.  Doc. 10, p. 16.  Betts's argument that the state court's determination is an unreasonable determination of the facts in light of the evidence is unpersuasive for a number of reasons.

First, while he claims that one individual did not have braids coming down his back and one had distinctive braids with large beads, by his own description of the photo array, all six men did have braids.[25]  Detective Beamon testified that Smith's description of the shooter was "a black male, short, with dread or braided-type hair."  Doc. 6-18, Exhibit 50, pp. 57.   In light of Smith's either/or description of the hairstyle and in light of the fact that all six men had braids of some type, it cannot be said that the state court's determination that "[t]he photo array was well-

---

[24] The photo array that Betts claims was unduly suggestive was the 2004 six-person black and white photo array presented to Smith.  Doc. 10, p. 15.  As indicated above, Betts does not challenge the photo arrays presented to Maynard.  Also, while he references the 2003 six-person photo arrays, he does not allege that those photo arrays were unnecessarily suggestive. Doc. 10, p. 14.  He asserts that neither Smith nor Maynard made a positive identification in 2003. Doc. 10, p. 14.  The record indicates that, in 2003, Smith picked Betts's picture from the photo array but indicated that she could not be 100% sure unless she saw him in person. Doc. 6-18, Exhibit 50, p. 85.

[25] The fact that all six individuals in the 2004 photo array had braids is also supported by Detective Beamon's testimony. Doc. 6-18, Exhibit 50, pp. 90-92.

constituted and not impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" (Doc. 6-1, Exhibit 9, p. 196) was an unreasonable determination.

Second, with respect to Betts's claim regarding the complexion of the individuals in the photo array, he contends that Smith described the suspect as "dark complexion" (Doc. 10, p. 14), that he is "medium complexion," and that three of the individuals in the photo array had light complexions (Doc. 10, pp. 15-16). Betts's claim that three of the individuals in the photo array had light complexions is undermined by Detective Beamon's testimony that the complexions of the individuals depicted in the 2004 photo array ranged from medium to dark. Doc. 6-18, Exhibit 50, p. 184. Further, even if Betts's description of the complexions of the individuals in the photo array is correct, by his own description there remained two photographs, in addition to his own, that depicted individuals with braids without light complexions. Doc. 10, p. 16. Accordingly, he has not demonstrated that the state court's decision that "[w]e cannot accept defendant's claim that his complexion is darker than the others so as to isolate his identity and we also reject defendant's contention that his photo is the only one consistent with Smith's description" (Doc. 6-1, Exhibit 9, p. 196) was an unreasonable determination.

Since Betts has failed to demonstrate that the state court's determination that the photo array was not impermissibly suggestive was contrary to or an unreasonable application of clearly established law or an unreasonable determination of the facts in light of the evidence, Betts's claim under Ground Three fails.

Even if the state court's determination that the photo array was not impermissibly suggestive were found to have been in error, in order to demonstrate a constitutional violation, Betts must also demonstrate that the state court's reliability determination was contrary to or an unreasonable application of clearly established federal law.

33

Betts attempts to demonstrate that Smith's eyewitness identification was unreliable.  He asserts that he and Smith were strangers to one another, her identification was made at night under stressful circumstances, she was not certain of her pre-trial identification, her description of the shooter was inconsistent with his own physical appearance, there was a gap between photo arrays and the time of the crime, a simultaneous rather than sequential photo array was used, Smith was "pretty hysterical" on the night of the crime and "could have been mistaken," and Smith was a juvenile.  Doc. 10, pp. 16-17.  Instead of demonstrating that the state court's determination was contrary to or an unreasonable application of clearly established federal law, Betts appears to be asking this Court to make its own reliability determination.  However, since the state court adjudicated that claim on the merits, this Court may not conduct a de novo review of it.  Rather, the Court applies AEDPA's deferential standard of review in determining whether the state court unreasonably applied clearly established federal law.  In applying that deferential standard, the undersigned concludes that Betts has not shown, nor can it be said, that the state court's decision that Smith's identification was reliable was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  Moreover, to the extent that Betts argues that the state court's decision is based on an unreasonable determination of facts, the Supreme Court recently reiterated that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Burt v. Titlow*, 134

S.Ct. 10, 15 (Nov. 5, 2013) (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010).[26]  Thus, even if this Court were to determine that it would reach a different conclusion based on the evidence, Betts would not be entitled to habeas relief because he has not demonstrated that the state court's determination was unreasonable.  *Id.*

For the reasons set forth herein, Betts's claim for federal habeas relief under Ground Three is without merit and should be denied.

## D.    Ground Four is without merit

In Ground Four, Betts argues that alleged prosecutorial misconduct that occurred during his first trial should have barred his retrial under the Double Jeopardy Clause of the federal constitution.[27]  Doc. 1, p. 8; Doc. 10, pp. 18-20.  Betts asserts that the alleged instances of prosecutorial conduct were: (1) the prosecutor's statement to the jury that Randleman would testify that Betts "hid a gun while being chased by the police 'that could tie him to a lot of stuff'" when the prosecutor knew that the statement would not come into evidence; and (2) the prosecutor's statements to the jury during opening and closing statements that "the victim's 'rims' were seen on Betts's car several days after the murder when the prosecutor knew that evidence would not and did not come in at trial. Doc. 1, p. 8; Doc. 10, pp. 18-20.  Following opening statements, Betts made a motion for mistrial which the trial court denied.  Doc. 6-7, Exhibit 39, pp. 124, 146, 149-57.  Betts also renewed his motion for mistrial at the close of the case which the trial court also denied.  Doc. 6-12, Exhibit 44, pp. 169-71.   Although Betts's

---

[26] In *Titlow*, the Supreme Court noted that under § 2254(e)(1), "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence'" but found it unnecessary to define the exact relationship between § 2254(d)(2) and § 2254(e)(1).  *Titlow*, 134 S.Ct. at 15.

[27] Betts presented this argument in state appellate court as Assignment of Error I, Doc. 6-1, Exhibit 6, pp. 79-83, and in the Ohio Supreme Court as Proposition of Law VI.  Doc. 6-1, Exhibit 11, p. 226-27.

motions for mistrial were denied, his first trial ultimately ended in a mistrial following the jury's

inability to reach a verdict.  Doc. 6-1, Exhibit 3, p. 30; Doc. 6-12, Exhibit 44, pp. 173-74.

"The Double Jeopardy Clause of The Fifth Amendment protects a criminal defendant

from repeated prosecutions for the same offense."[28]  *Oregon v. Kennedy*, 456 U.S. 667, 671

(1982).  Relying, in part, on *Kennedy*, Betts argues that the alleged "prosecutorial misconduct

was done with the intent to obtain a conviction (or hung jury) where an acquittal was otherwise

likely or to inspire a motion for mistrial." Doc. 10, p. 19.  Under the United States Supreme

Court's decision in *Kennedy*, "where a defendant in a criminal trial successfully moves for

mistrial . . . the circumstances under which such a defendant may invoke the bar of double

jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise

to the successful motion for mistrial was intended to provoke the defendant into moving for a

mistrial."   456 U.S. at 679.

In addressing Betts's double jeopardy claim, the Eighth District Court of Appeals

analyzed his claim under the standard enunciated in *Kennedy* and when doing so noted that

Betts's claim presented the "somewhat unusual backdrop of potential double jeopardy

implications following the *denial* of the motion for mistrial and the case is then retried following

a hung jury." Doc. 6-1, Exhibit 9, p. 191.  Following its analysis of Betts's double jeopardy

claim, including its findings that the trial court did not abuse its discretion when it denied Betts's

motions for mistrial in the first trial and that the prosecutor did not act with intent to either

inspire a motion for mistrial or to obtain a conviction where an acquittal was likely, the Eighth

District Court of Appeals concluded that his claim was without merit. Doc. 6-1, Exhibit 9, pp.

---

[28] The Fifth Amendment has been "made applicable to the States through the Due Process Claus of the Fourteenth
Amendment."  *Oregon v. Kennedy*, 456 U.S. 667, 671-72, n. 3 (1982).

188-93; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶¶ 15-30 (Ohio Ct. App. Oct. 18, 2007).

As correctly recognized by the state appellate court, the facts underlying Betts's case are not similar to those in *Kennedy*.  For example, in *Kennedy*, the defendant had successfully moved for mistrial following the prosecutor's questioning of an expert witness.  456 U.S. at 669.   In contrast, in his first trial, Betts's motion for mistrial was denied but his first trial ended in a mistrial following the jury's inability to reach a verdict.[29]  Doc. 6-12, Exhibit 44, pp. 173-74. Because of the foregoing lack of factual similarities, the standard enunciated in *Kennedy* may not be the appropriate standard to apply to Betts's case.  For example, as noted by the state appellate court when reviewing Betts's claim, in *United States v. Gollamudi*, 1993 WL 32700, *1 (E.D.N.Y. Jan. 3, 1993), the district court was faced with the factual scenario presented here, i.e., the defendant had moved for a mistrial based on prosecutorial misconduct; his motion was denied; the jury was later unable to reach a verdict and the court declared a mistrial. In *Gollamudi*, the court  indicated that, since the trial court in *Kennedy* had granted the defendant's motion for mistrial, *Kennedy* did "not directly address the appropriate standard, if any, for barring retrial when as, in this case, the defendant's requests for a mistrial were denied, but the court declared a mistrial after the jury was hung."  *Id.; see also Walls v. Hemingway*, 27 F. App'x 553, 556 (6th Cir. 2001) ("Where a defendant asks for, *and gets*, a mistrial based on prosecutorial misconduct, the Constitution bars his retrial if the prosecutor's misconduct was calculated to goad the defendant into seeking a mistrial.") (citing *Kennedy*, 456 U.S. at 675-676) (emphasis supplied); *see also Whiteside v. Warden, Southern Ohio Correctional Facility*, 2011

---

[29] Betts's double jeopardy claim is not based on the trial court's declaration of a mistrial based on a hung jury.  Even if he were making such a challenge, the "manifest necessity" standard is the "the classical test for lifting the double jeopardy bar to a second trial" and "the hung jury remains the prototypical example" of situations "meeting the 'manifest necessity' standard."  *Kennedy*, 456 U.S. at 372.

WL 5551598 * 9 (S.D. Ohio Nov. 15, 2011), *report and recommendation adopted* 2012 WL 3637369 (Aug. 22, 2012) (suggesting that it might be a stretch to apply principles discussed in *Oregon v. Kennedy* to a case where the actual cause of the mistrial was an inability of the jury to reach a verdict). The court in *Gollamudi* then proceeded to consider which standard should apply, i.e., the *Kennedy* standard as proposed by the defendant or the standard enunciated in *Wallach*, a Second Circuit decision involving retrial after reversal of a conviction, as proposed by the government. *Gollamudi*, 1993 WL 32700 at *1 (discussing *United States v. Wallach*, Slip Op. 92-1221 (2nd Cir. Nov. 9, 1992)). The court in *Gollamudi* concluded that it need not reach the question of which standard should apply but noted that "[b]oth *Kennedy* and *Wallach* make clear that a prosecutor's misconduct, no matter how egregious, will not bar subsequent retrial as long as the prosecutor did not act with the specific intent either to inspire a motion for mistrial, as in *Kennedy*, or to obtain a conviction where an acquittal was likely, as in *Wallach*." 1993 WL 32700 at *2.

Likewise, it is not necessary for this Court to determine whether *Kennedy* or a standard less favorable to Betts should apply to the factual scenario presented here. First, Betts relies on *Kennedy* and the State does not argue for another standard. Moreover, Betts has failed to demonstrate that the Eighth District Court of Appeals unreasonably applied *Kennedy* when it concluded that there was no evidence of intent by the prosecutor to inspire a motion for mistrial or obtain a conviction where an acquittal was likely.

The Eighth District Court of Appeals reviewed the record and determined that:

[*P29] After reviewing the record, we find no plain error in proceeding to the second trial. The record reveals that the prosecuting attorney believed that Randleman had made the oral statement about defendant's fears of discovery of the gun to investigating officers, and that he believed that he could impeach Randleman with the prior statement under Evid.R. 607. Moreover, there is absolutely no indication of an intent to goad the defense into moving for a

mistrial, no evidence of a sequence of overreaching prior to this incident, and the prosecutor resisted or was surprised by the defendant's motion for a mistrial. Likewise, the record reveals that the prosecuting attorney believed that Pomales' out-of-court statement was not hearsay, and offered it to show the subsequent conduct of officers in relation to Randleman and her car. There is absolutely no indication of an intent to goad the defense into moving for a mistrial, no evidence of a sequence of overreaching prior to this incident, and the prosecutor resisted or was surprised by the defendant's motion for a mistrial. The prosecutor's actions did not operate to bar the retrial as the prosecutor did not act with the specific intent either to inspire a motion for a mistrial, or to obtain a conviction where an acquittal was likely.

Doc. 6-1, Exhibit 9, p. 193; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶ 29 (Ohio Ct. App. Oct. 18, 2007).

Betts argues that "[o]nly through an evidentiary hearing can one properly determine the intent of the prosecutor."  Doc. 10, p. 19.  However, Betts's argument is unconvincing. Betts fails to argue or demonstrate that clearly established federal law required the state court to conduct an evidentiary hearing.  Further, Betts has not shown nor does the state court's decision demonstrate that there was a genuine issue in the mind of the state court such that a hearing may have been required.  *See U.S. v. White*, 914 F.2d 747, 752, n. 1 (6th Cir. 1990) (citing *United States v. Wentz* 800 F.2d 1325 (4th Cir. 1986) for the proposition that "a hearing was necessary only if there existed a genuine issue in the mind of the trial court concerning the prosecutor's intent.").  For example, in reaching its conclusion, the appellate court stated  that there was " absolutely no indication of an intent to goad . . ." Doc. 6-1, Exhibit 9, p. 193; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶ 29 (Ohio Ct. App. Oct. 18, 2007).

Betts has not shown that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  Nor has he demonstrated an entitlement to an

evidentiary hearing.[30] Accordingly, Betts's claim for federal habeas relief under Ground Four is without merit and should be denied.

## E.        Ground Five is without merit

In Ground Five, Betts argues that the trial court improperly instructed the jury on the elements of the offense of aggravated robbery.[31]  Doc. 1, p. 8; Doc. 10, pp. 21-23.  He asserts that, based on the trial court's alleged misstatement of the law, it allowed the jury to find him guilty of aggravated robbery (and thus felony murder) based on facts not contemplated by the Ohio aggravated robbery statute.  Doc. 1, p. 8; Doc. 10, p. 21.  Betts claims that the trial court erroneously "instructed the jury that the act of using a deadly weapon or inflicting serious physical harm 'must *occur as part of the sequence of acts leading up to*, occurring during, or immediately subsequent to the theft.'"[32]  Doc. 10, p. 22 (emphasis in Betts's Traverse). He asserts that this instruction misstated the definition of the aggravated robbery offense as set forth in O.R.C. § 2911.01.[33]  Doc. 10, p. 22.

---

[30] Betts requests an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) and supports his request with a citation to *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005).  Doc. 10, p. 19.  Betts's reliance upon *Abdus-Samad* is misplaced and does not demonstrate his request for an evidentiary hearing is warranted.  In *Abdus-Samad*, the Sixth Circuit found that the petitioner had failed to meet AEDPA's "strict requirements" for an evidentiary hearing.  *Id.* Further, unlike the petitioner in *Abdus-Samad*, Betts has made no attempt to demonstrate that he meets the requirements of 28 U.S.C. § 2254(e)(2).

[31] Betts presented this argument in state appellate court as Assignment of Error VIII, Doc. 6-1, Exhibit 6, pp. 101-03, and in the Ohio Supreme Court as Proposition of Law VIII.  Doc. 6-1, Exhibit 11, p. 227-29.

[32] The entirety of the trial court's jury instructions is located in the record at Doc. 6-19, Exhibit 51, pp. 113-63.  Although not identified by Betts, Respondent indicates, and Betts does not dispute that, the challenged instruction is located at Doc. 6-19, Exhibit 51, pp. 139 (line 25) – 140 (lines 1-4).  Doc. 6, p. 36.

[33] O.R.C. 2911.01(A) provides that:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
(3) Inflict, or attempt to inflict, serious physical harm on another.

Ohio Rev. Code Ann. § 2911.01(A).

Betts asserts that AEDPA deference is not due the Eighth District Court of Appeals'
decision because it did not address the merits of his claim.  However, the Eighth District Court of
Appeals did address Betts's claim and, even if that decision lacks detailed analysis of the federal
claim, that does not mean that the court's decision is not an adjudication on the merits under §
2254(d).  *See Johnson v. Williams*, 133 S.Ct. 1088, 1096 (2013) ("[w]hen a state court rejects a
federal claim without expressly addressing that claim, a federal habeas court must presume that
the federal claim was adjudicated on the merits" subject to that presumption being rebutted in
some limited circumstances) (relying on *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011), which
held that, "§ 2254(d) 'does not require a state court to give reasons before its decision can be
deemed to have been adjudicated on the merits.'").

> The Eighth District Court of Appeals addressed Betts's claim and stated:
>
> [*P74] For his eighth assignment of error, defendant claims that the trial court
> erroneously instructed the jury as to the offense of aggravated robbery.
> Specifically, he challenges that portion which indicate that the violent act "must
> occur as part of the sequence of acts leading up to, occurring during or
> immediately subsequent to armed robbery and that the death was associated with
> the armed robbery."
>
> **[*P75]** As an initial matter, we note that this portion of the instruction pertained
> to the charge of attempted aggravated robbery. We further note that no error was
> recognized in connection with this instruction in *State v. Andrews* (May 4, 1995),
> Cuyahoga App. No. 67370, 1995 Ohio App. LEXIS 1859.
>
> [*P76] We reject this claimed error.

Doc. 6-1, Exhibit 9, p. 206; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶¶ 74-76 (Ohio
Ct. App. Oct. 18, 2007).

As discussed above, deference is due the state court's finding of no error regarding the
aggravated robbery jury instructions.  To warrant habeas relief, Betts must demonstrate not only
that the jury instructions were erroneous but also that, taken as a whole, they were so infirm that

they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing require to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "It must be established not merely that the instruction was undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146.  The category of infractions that violate fundamental fairness is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights. *Estelle*, 502 U.S. at 72-73.  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly." *See Coe v. Bell*, 161 F.3d 320, 329 (6th Cir.1998) (citing *Estelle*, 502 U.S. at 72).

Betts does not argue that the state court's determination that the challenged jury instruction applied to a charge of *attempted* aggravated robbery was in error.  Moreover, Betts cites to the Ohio jury instruction for aggravated robbery, O.J.I. 511.01(A)(4), as support for his argument that the trial court's jury instruction was in error.  However, Betts's argument that the trial court erred because its jury instruction was different from that contained in the standard Ohio Jury Instructions is unpersuasive. "[T]he fact that the instruction was allegedly deficient under state law is not a basis for habeas relief." *Estelle*, 502 U.S. 62, 72 (1991) (internal citations omitted).  "Federal habeas courts therefore do not grant relief, as might a state appellate court,

simply because the instruction may have been deficient in comparison to the" state model jury instructions. *Id.*; *see also Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (citing *Estelle* for the principle that "federal courts reviewing habeas petitions do not grant relief on a jury-instruction claim simply because the instruction may have been deficient in comparison to state-law models."). Thus, Betts has not demonstrated that the jury instruction was in fact erroneous as it related to aggravated robbery.[34]

Even if Betts could demonstrate that the jury instruction was erroneous, he has failed to demonstrate that the jury instruction so infected the entire trial that his conviction violates due process. Betts summarily argues that, because he was convicted, the jury instruction infected his entire trial as to deny him due process. Doc. 10, p. 21. However, he does not argue nor has he attempted to demonstrate that there was a reasonable likelihood that the jury applied the instruction improperly. Thus, he cannot demonstrate that the state court's jury instruction so infected the entire trial as to deny him due process or that the state court's determination was unreasonable or contrary to clearly established federal law.[35]

---

[34] To the extent that Betts asserts that the court's reliance upon *State v. Andrews* should be considered irrelevant (Doc. 10, pp. 21-22), his argument is unpersuasive. Although the defendant in *State v. Andrews*, 1995 WL 264573, *4 (Ct. of App. Cuy. Co. May 4, 1995) did not challenge the aggravated robbery instruction on the same grounds as Betts challenges the instruction, the jury instruction therein contained the "as part of a sequence of the acts leading up to . . ." language that Betts's challenges here and, as noted by the Eighth District Court of Appeals in Betts's direct appeal, no error was found. Doc. 6-1, Exhibit 9, p. 206.

[35] Betts relies on *In re Winship*, 397 U.S. 359 (1970) and *Sullivan v. Louisiana*, 508 U.S. 275 (1993), and asserts that the trial court's aggravated robbery jury instruction alleviated the State's burden of proving all the essential elements of the crime beyond a reasonable doubt. Doc. 10, p. 21-23. In *In re Winship*, the Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364, 368. In *Sullivan*, the Court reaffirmed that the "beyond-a-reasonable doubt requirement . . . applies in state as well as federal proceedings." 508 U.S. at 278. However's Betts's reliance upon *In re Winship* and *Sullivan* is unpersuasive because they are factually distinguishable. In *Sullivan*, the jury instruction at issue was the trial court's definition of "reasonable doubt." *Sullivan*, 508 U.S. at 276. *In re Winship*, the trial court applied a preponderance of the evidence standard in a juvenile adjudicatory proceeding and the narrow question before the Court was "whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 U.S. at 359-60.

Accordingly, for the reasons set forth herein, Betts's claim for federal habeas relief under Ground Five is without merit and should be denied.

## F.      Ground Six is without merit

In Ground Six, Betts argues that he was denied effective assistance of counsel when his trial counsel failed to object to the allegedly defective aggravated robbery jury instruction.[36] Doc. 1, p. 9; Doc. 10, p. 23.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

The Eighth District Court of Appeals considered Betts's claim of ineffective assistance of trial counsel and found no merit to the claim.  Doc. 6-1, Exhibit 9, p. 206.  In reviewing the claim, the court stated: "As we have rejected the underlying challenge to the jury instruction, the claim of error premised thereon must likewise fail.  *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237."  Doc. 6-1, Exhibit 9, p. 206.

Although brief, the state court did provide reasons relative to Betts's ineffective assistance of counsel claim and, even if it had not, "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. at 785.  Thus, since Bett's claim of ineffective assistance of counsel was adjudicated on the merits by the Ohio Court of Appeals, this Court must give

---

[36] Betts presented this argument in state appellate court as Assignment of Error IX, Doc. 6-1, Exhibit 6, pp. 103-04, and in the Ohio Supreme Court as Proposition of Law IX.  Doc. 6-1, Exhibit 11, p. 227-29.

deference to that adjudication.  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011) (indicating that in *Richter*, 131 S.Ct. at 786-88, the Supreme Court had emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA).

The Eighth District Court of Appeals correctly recognized that *Strickland* governs claims of ineffective assistance of counsel and found that, since the state court found no merit to Betts's underlying challenge to the jury instruction, his ineffective assistance of counsel claim premised thereon was also without merit.  Doc. 6-1, Exhibit 9, p. 206 (citing *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237, which relied upon *Strickland v. Washington*, 466 U.S. at 697, in concluding that, because the grounds that underlay each instance of ineffective assistance of counsel had been found to be without merit, it was not necessary to address the counsel-performance component of the ineffective assistance of counsel claims).  Betts has failed to demonstrate that the state court decision was contrary to or an unreasonable application of *Strickland*.

Accordingly, Betts's claim for federal habeas relief under Ground Six is without merit and should be denied.

## G.     Grounds Seven and Eight are without merit

In Grounds Seven and Eight, Betts argues that there was insufficient evidence to prove that he committed aggravated robbery and felony murder (Ground Seven) and insufficient evidence that he was the shooter (Ground Eight).[37]  Doc. 1, p. 9; Doc. 10, pp. 24-25.

---

[37] Betts presented this argument in state appellate court as Assignment of Error IV, Doc. 6-1, Exhibit 6, pp. 90-94, and in the Ohio Supreme Court in Propositions of Law VII-X.  Doc. 6-1, Exhibit 11, pp. 227-30.

**Sufficiency standard**

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by AEDPA. *Id.* As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d at 205. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 at 319. The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). In making this determination, a court does not reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

Ultimately, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). A claim that the evidence was constitutionally insufficient to support a conviction is a mixed question of law and fact. *Starr v. Mitchell*, 234 F.3d 1270, at *3 (6th Cir. 2000) (unpublished). Thus, "a writ of habeas corpus may be issued for evidence insufficiency only if the state court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. §2254(d)(1), or was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. §2254(d)(2)." *Id.*

**Application of the standard to Grounds Seven and Eight**

In Ground Seven, Betts asserts that, in order to prove aggravated robbery (and thus felony-murder), the State was required to prove that he "caused serious physical harm (or used a deadly weapon) 'in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense.'" Doc. 10, p. 24 (citing O.R.C. § 2911.01). He argues that the State must have proven that he caused serious physical harm (death) to Reyes "in committing" the theft offense (stealing the car). Doc. 10, p. 24. In essence, Betts is arguing that, because Reyes was killed prior to the car being stolen, the evidence was insufficient to convict him of the crimes of aggravated murder and aggravated robbery. To support his argument, he asserts that the state court of appeals erroneously relied upon a "continuous transaction" test that Betts asserts the Ohio Supreme Court rejected in the context of a robbery case. Doc. 10, p. 24 (relying on *State v. Thomas*, 106 Ohio St.3d 133 (2005)).[38]

---

[38] Betts indicates that *State v. Thomas*, 106 Ohio St.3d 133 was decided in 2006. However, it was decided in 2005.

He does not otherwise argue that the state court of appeals unreasonably applied the *Jackson* standard when it determined that there was sufficient evidence to find him guilty beyond a reasonable doubt of felony-murder.

In Ground Eight, Betts asserts that the State did not prove the identity of the shooter and the state court unreasonably applied the *Jackson* standard.  Doc. 10, pp. 24-25.  The underlying basis of Betts's argument in Ground Eight is that the eyewitness testimony was weak and unreliable.  Doc. 10, pp. 24-25.

In addressing Betts's sufficiency of the evidence claim, the Eighth District Court of Appeals applied the federal standard through use of state law and found that there was sufficient evidence to support his convictions.  Doc. 6-1, Exhibit 9, pp. 198-200.   In reaching its determination, the Eighth District Court of Appeals rejected Betts's argument that there is no aggravated robbery when the victim's property is taken after he is murdered.  Doc. 6-1, Exhibit 9, p. 200.  In doing so it cited to *State v. Smith*, 61 Ohio St.3d 284, 290 (1991) and *State v. Rojas,* 64 Ohio St.3d 131, 139 (1992) for the principle that "[T]he victim of a robbery, killed just prior to the robber's carrying off [his] property, is nonetheless the victim of an aggravated robbery. The victim need not be alive at the time of asportation. A robber cannot avoid the effect of the felony-murder rule by first killing a victim, watching [him] die, and then stealing [his] property after the death." Doc. 6-1, Exhibit 9, p. 200.   Betts argues that this determination was erroneous and suggests that such a principle was rejected in *State v. Thomas ,* 106 Ohio St.3d 133 (2005). Doc. 10, p. 24.  However, there is nothing in the *Thomas* decision to suggest that the Ohio Supreme Court abrogated or intended to abrogate the principle enunciated in *Smith,* i.e., that a robber cannot avoid the effect of the felony-murder rule by killing the victim and then taking his

property.[39]  In fact, more than a year after its decision in *Thomas*, the Ohio Supreme Court, in a

case involving aggravated robbery and aggravated murder charges, reiterated that:

> {¶ 129} We repeatedly have rejected the argument that there is no aggravated
> robbery when the victim's property is taken after he is murdered. "[T]he victim of
> a robbery, killed just prior to the robber's carrying off [his] property, is
> nonetheless the victim of an aggravated robbery. The victim need not be alive at
> the time of asportation. A robber cannot avoid the effect of the felony-murder rule
> by first killing a victim, watching [him] die, and then stealing [his] property after
> the death." *State v. Smith* (1991), 61 Ohio St.3d 284, 290, 574 N.E.2d 510.
> Accord *State v. Rojas* (1992), 64 Ohio St.3d 131, 139, 592 N.E.2d 1376.

*State v. Roberts*, 110 Ohio St. 3d 71, 88 (2006).

Further, as recently as 2012, this Court addressed an almost similar argument by a

petitioner in a habeas case.  *Christopher v. Tibbals*, 2012 WL 3067360, *17-19 (N.D. Ohio, May

10, 2012) (M.J. Limbert), *report and recommendation adopted*, 2012 WL 3067358 (N.D. Ohio,

July 27, 2012) (J. Oliver).  In *Christopher*, the petitioner, in reliance upon *State v. Thomas*, 106

Ohio St.3d 133 (2005), argued that "the state failed to show that harm was inflicted during a theft

offense or in fleeing after an offense" and that "the thefts were an afterthought and thus not part

of a robbery."  2012 WL 3067360, * 17.  The state court in the *Christopher* case had, like the

state court in this case, relied upon principles enunciated in *Smith*.  *Christopher*, 2012 WL

3067360, * 18 (indicating that the state court relied upon *State v. Biros*, 78 Ohio St.3d 426

(1997) in reaching its sufficiency determination and *Biros* relied upon *State v. Smith,* 61 Ohio

St.3d 284, 290 (1991)).  This Court rejected the petitioner's argument and concluded that the

evidence was sufficient to support a conviction for aggravated robbery and that the state court

did not unreasonably apply clearly established federal law or make an unreasonable

determination in light of the evidence presented at trial.  *Christopher*, 2012 WL 3067360, * 17-

---

[39] Also, *Thomas* is factually distinguishable from this case.  For example, in *Thomas*, there was no felony-murder
charge and the court indicated that the "case comes down to whether there was sufficient evidence to show that
Thomas was 'fleeing immediately' after committing a theft offense when he inflicted harm" on the victim. *Thomas,*
106 Ohio St.3d 133, 135 (2005).

19.   Betts has similarly failed to demonstrate that the state court erroneously applied the law to the facts of his case.

In support of his claim that there was insufficient evidence to convict him of the charges, Betts also argues that improper inferences were drawn from evidence presented by the State, including the State's evidence that Bett's fingerprint was found on the victim's car and that he was arrested at a location where the firearm connected to the murder was located.  Doc. 10, pp. 24-25.  However, Betts's arguments are unpersuasive.  In addition to the foregoing evidence that Betts agrees was presented to the jury, there was also eyewitness testimony.[40] Further, it is not improper for the trier of fact to draw inferences from the evidence. *Jackson*, 443 at 319 (It is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts."). Additionally, "[c]ircumstantial evidence alone is sufficient to support a conviction." *Johnson*, 200 F.3d at 992; s*ee also Durr,* 487 F.3d at 449 (when considering a sufficiency claim, "circumstantial evidence is entitled to equal weight as direct evidence").

Considering the evidence submitted to the jury in the light most favorable to the prosecution, including the eyewitness testimony identifying Betts as the shooter, Betts's fingerprint being on Reyes's car even though Betts claimed he did not know Reyes and had not seen his car, and evidence from a prior arrest which linked Betts to 1371 East 185th Street (the location where the murder weapon was located in a grill), the undersigned concludes that a rational trier of fact could have found that Betts was the shooter and that the prosecution had proven the essential elements of aggravated murder and aggravated robbery beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.

---

[40] Betts also relies on his arguments that the eyewitness testimony was unreliable.  Doc. 10, pp. 24-25.  However, Betts's claim that the eyewitness testimony was not reliable was presented in Ground Three and has been determined to be without merit.

Even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, deference is still due to the court of appeals' sufficiency determination as long as it is not unreasonable. *Brown*, 567 F.3d at 205*; see also White*, 602 F.3d at 710. When addressing Betts's sufficiency claim, the Eighth District Court of Appeals stated, in part:

> [*P56] In this matter, the state's evidence demonstrated that defendant chased Reyes down and shot and killed him then fled in Reyes' car. The car was stripped of its rims and defendant's fingerprints were found on the fender, despite defendant's statement to police that he did not know Reyes and had never seen his car. In a prior arrest, defendant was also linked to 1371 East 185th Street, the location from which the murder weapon was recovered. In light of the foregoing, we conclude that this evidence, if believed, would convince the average mind of defendant's guilt of the offenses beyond a reasonable doubt. Cf. *State v. Scott,* 101 Ohio St.3d 31, 2004 Ohio 10, 800 N.E.2d 1133.

Doc. 6-1, Exhibit 9, p. 200; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶ 56 (Ohio Ct. App. Oct. 18, 2007).

Betts has not demonstrated, nor does the undersigned find, that the state court's sufficiency determination is based on an unreasonable determination of the facts in light of the evidence presented or that the state court's determination is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011).

Thus, for the foregoing reasons, Betts's claims for federal habeas relief under Grounds Seven and Eight are without merit and should be denied.

### H. Ground Nine is without merit

In Ground Nine, Betts argues that his right to due process was violated as a result of prosecutorial misconduct during his second trial.[41] Doc. 1, p. 10; Doc. 10, pp. 26-27. Betts alleges that the prosecutor improperly (1) vouched for the credibility of the sole eyewitness; (2) gave a personal opinion to rebut an expert on eyewitness identification; (3) disparaged Betts; (4) referred to evidence excluded by the trial court; and (5) misstated facts and argued facts outside the record. Doc. 1, p. 10; Doc. 6, p. 44; Doc. 10, p. 26.

When reviewing a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden*, 477 U.S. at 181 (citing *Donnelly*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The Sixth Circuit has stated that "to satisfy the standard for prosecutorial misconduct, the conduct must be both improper and flagrant." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). If conduct is determined to be improper, the Sixth Circuit has set forth four factors to be used in determining whether the conduct was flagrant:

> (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the

---

[41] Betts presented this argument in state appellate court as Assignment of Error X, Doc. 6-1, Exhibit 6, pp. 104-107, and in the Ohio Supreme Court as Proposition of Law XI. Doc. 6-1, Exhibit 11, pp. 230-31.

remarks were deliberately or accidentally presented to the jury, and (4) the total strength of the evidence against the defendant.

*Id.; see also Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006); *Bowling v. Parker*, 344 F.3d 487, 512-513 (6th Cir. 2003).

In addressing Betts's claims of prosecutorial misconduct, the Eighth District Court of Appeals applied clearly established federal law through use of state law decisions and stated:

[*P78] For his tenth assignment of error, defendant maintains that the trial was tainted by prosecutorial misconduct.

[*P79] The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N. E.2d 394. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton* (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970. Additionally, the appellate court should consider whether the alleged misconduct was "an isolated incident in an otherwise properly tried case." Id.

[*P80] Defendant complains that the prosecuting attorney noted that he was unemployed, that he breaks into houses, that the jurors should use their common sense in evaluating eyewitness identification, and that he misrepresented the evidence of record.

[*P81] The reference to a defendant's unemployed status was determined not to amount to prejudicial prosecutorial misconduct in *State v. Siler,* Ashland App. No. 02 COA 028 , 2003 Ohio 5749; vacated on other grounds *Siler v. Ohio* (2004), 543 U.S. 1019, 125 S.Ct. 671, 160 L.Ed.2d 494.

[*P82] The comment that defendant breaks into houses had only a loose association to the evidence as the state demonstrated that defendant was arrested following a report of a break-in. We cannot conclude that this isolated comment prejudicially affected defendant's substantial rights, as the jury was repeatedly informed that the comments were not evidence.

[*P83] The reference to jurors using their common sense has been determined to

53

be neither prosecutorial misconduct nor plain error. See *Toledo v. Moore*, Lucas App. No. L-02-1288, 2003 Ohio 2362.

[*P84] As to the claims that the prosecutor committed misconduct by distorting evidence of record, we note that Dabney's fingerprints were evaluated (Tr. 4231), the similarity of the rims taken from Reyes and later put on Randleman's car was established, both Smith and Maynard did identify defendant as the assailant. We therefore are unable to conclude that the prosecuting attorney caused prejudicial error in connection with these remarks. Cf. *State v. Daoud*, Montgomery App. No. 19213, 2003 Ohio 676.

[*P85] We reject this assignment of error.

Doc. 6-1, Exhibit 9, p. 206-08; *State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873, ¶¶ 78-85

(Ohio Ct. App. Oct. 18, 2007).

The court of appeals reviewed the alleged instances of prosecutorial misconduct in the context of the evidence presented. Doc. 6-1, Exhibit 9, pp. 206-08.  In doing so, the court of appeals concluded that the prosecutor's conduct was not improper and/or prejudicial to Betts's right to fair trial.  Doc. 6-1, Exhibit 9, pp. 206-08.

Betts argues that the evidence against him was weak; the prosecutor's conduct was intended to mislead the jury in an attempt to gain a conviction that the State could not obtain in the first trial; and that the prosecutor's conduct was not isolated or accidental.  Doc. 10, pp. 26-27.  Even if it were determined that the prosecutor's remarks were improper, Betts is required to demonstrate that the impropriety so infected his trial with unfairness that he was denied his right to due process.  *See Donnelly*, 416 U.S. 637.  Further, given the deference afforded the court of appeals' decision, it is not for this Court to engage in a de novo review of the evidence.  Rather, this Court must determine whether the Ohio Court of Appeals unreasonably applied the federal standard applicable to claims of prosecutorial misconduct.  In consideration of the deference afforded the state court's decision, the undersigned concludes that Betts has not demonstrated that the state court's determination that the prosecutor's conduct was not improper and/or did not

prejudice Betts's right to a fair trial is based on an  unreasonable determination of the facts in light of the evidence presented or that the state court's determination is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011).

For the foregoing reasons, Betts's claim for federal habeas relief under Ground Nine is without merit and should be denied.

## I.  Grounds Ten, Eleven, Twelve and Thirteen are not cognizable, are procedurally defaulted and/or are without merit

Grounds Ten, Eleven, Twelve and Thirteen relate to Betts's state post-conviction proceedings.  Doc. 1, pp. 10-12; Doc. 10, pp. 27-33.  Grounds Ten, Eleven and Twelve will be addressed together and Ground Thirteen will be addressed separately.

### 1.  Grounds Ten, Eleven and Twelve are not cognizable and are without merit

In Ground Ten, Betts asserts that the doctrine of *res judicata* did not bar his post-conviction claim that his trial counsel failed to investigate and present an alibi through the testimony of Betts, Randleman, and Fernando Taylor and that the state court's application of *res judicata* violated due process of law.[42]  Doc. 1, p. 10, Doc. 10, pp. 27-29.  In Ground Eleven, Betts asserts that the trial court's failure to conduct an evidentiary hearing in the post-conviction proceedings violated due process of law because he submitted three affidavits with evidence dehors the record.[43]  Doc. 1, p. 11; Doc. 10, pp. 27-30.  In Ground Twelve, Betts asserts that the

---

[42] Betts presented this argument in the state appellate court as Assignment of Error I, Doc. 6-2, Exhibit 23, pp. 73-76, and in the Ohio Supreme Court as Proposition of Law I.  Doc. 6-2, Exhibit 28, pp. 110-13.

[43] Betts presented this argument in the state appellate court as Assignment of Error II, Doc. 6-2, Exhibit 23, pp. 76-77, and in the Ohio Supreme Court as Proposition of Law II.  Doc. 6-2, Exhibit 28, pp. 113-15.

trial court's failure to order discovery in the post-conviction proceedings violated due process of law.[44]  Doc. 1, p. 11; Doc. 10, pp. 32-33.

Respondent asserts that Betts's claims the trial court's failure to conduct an evidentiary hearing, denial of discovery, and application of *res judicata* to his state post-conviction proceedings are not challenges to the constitutionality of the conviction for which he is now incarcerated.  Doc. 6, pp. 57-58.  Accordingly, Respondent argues, and the undersigned agrees, that those claims are not cognizable in this federal habeas corpus proceeding.  Doc. 6, p. 57-58.

The Sixth Circuit has held that claims challenging state post-conviction proceedings cannot be brought under the federal habeas corpus statute, 28 U.S.C. § 2254.  *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973)).

Ohio provides a process by which prisoners can assert claims that their federal constitutional rights have been violated.  *See* O.R.C. § 2953.21 et seq.; *see also Schulte v. Koneth*, 1998 WL 553630, *2 (11th Dist. July 10, 1998).  As part of that process, a hearing under O.R.C. § 2953.21 is not automatically required.  *See State v. Jackson*, 64 Ohio St.2d 107, 110 (1980).  Betts was not denied the right to seek post-conviction relief in the state court; rather, the trial court considered his petition for post-conviction relief without conducting an evidentiary hearing.[45]  Doc. 6-2, Exhibit 22, pp. 54-65.  In doing so, the trial court found Betts's petition to be barred by *res judicata* and/or concluded that his ineffective assistance of counsel claim was

---

[44] Betts presented this argument in the state appellate court as Assignment of Error III, Doc. 6-2, Exhibit 23, pp. 77-78, and in the Ohio Supreme Court as Proposition of Law III.  Doc. 6-2, Exhibit 28, pp. 114-15.

[45] The Ohio Court of Appeals considered the trial court's denial of an evidentiary hearing and concluded that the trial court did not err.  Doc. 6-2, Exhibit 26, pp. 100-01, ¶¶ 26-31.

without merit.[46]  Doc. 6-2, Exhibit 22, pp. 54-65.  The trial court also concluded that Betts's request for discovery was not warranted.[47]  Doc. 6-2, Exhibit 22, p. 64.

Since Betts's challenges in Grounds Ten, Eleven and Twelve are not attacks on the underlying conviction but rather attacks on the state post-conviction proceedings, those claims are not cognizable in this case.  *Kirby*, 794 F.2d 245.

### 2.  Ground Thirteen is procedurally defaulted and/or without merit

To the extent that the state court determined that *res judicata* barred Betts's post-conviction petition which asserted a claim of ineffective assistance of trial counsel based on an alleged failure to investigate and present an alibi defense at trial, those claims are procedurally defaulted.  Alternatively, Ground Thirteen is without merit because Betts has failed to demonstrate that the state court's determination that trial counsel was not constitutionally ineffective is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011).

### a.  Ground Thirteen is procedurally defaulted

Respondent argues that Grounds Ten through Thirteen are procedurally defaulted.  Since Grounds Ten, Eleven and Twelve are not cognizable on federal habeas review, the Court need only assess whether Ground Thirteen has been procedurally defaulted.

### **Procedural default standard**

---

[46] The Ohio Court of Appeals considered the trial court's application of *res judicata* to Betts's post-conviction petition and its decision that Betts's was not denied effective assistance of trial counsel and found that the trial court did not err.  Doc. 6-2, Exhibit 26, pp. 100-01, ¶¶ 25-32.  The effect of the state court's application of *res judicata* and the state court's determination that Betts was not denied the effective of assistance of trial counsel are addressed in further detail in connection with Ground Thirteen.

[47] The Ohio Court of Appeals considered the trial court's denial of Betts's request for discovery and concluded that the trial court did not err.  Doc. 6-2, Exhibit 26, p. 101, ¶ 33.

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default . . . operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Procedural default may occur in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* the Sixth Circuit set forth four prongs for use in determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); s*ee also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).  Respondent argues that a procedural default occurred because the four *Maupin* prongs have been met. Doc. 6, pp. 62-63.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**Procedural default analysis of Ground Thirteen**

Respondent argues that the state court determined that Betts's post-conviction claims were barred by *res judicata* and thus he asserts that Ground Thirteen, which asserts a claim of ineffective assistance of counsel relating to Betts's claimed alibi defense, is procedurally defaulted.  Doc. 6, pp. 62-63.  Accordingly, analysis under *Maupin* is necessary.  *Stojetz v. Ishee*, 389 F.Supp.2d 858, 882 (S.D. Ohio 2005).

 As shown herein, the first three *Maupin* prongs have been met.  *See Villa v. Kernes*, 2012 WL 1435728, * 17 (Mar. 27, 2012), *report and recommendation adopted*, 2012 WL 1435725 (Apr. 23, 2012) (indicating that "[t]he Ohio rule of res judicata satisfies the first three factors in *Maupin*") (citing *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).  First, "Ohio's doctrine of *res judicata* . . . provides in relevant part that a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised, or could have been raised, at trial or on appeal from that judgment." *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (citing *State v. Perry*, 10 Ohio St.2d 175 (1967)).   Next, the Ohio Court of Appeals enforced Ohio's doctrine of *res judicata*.  It stated, in relevant part:

> [*24] Finding the affidavits not credible, the trial court held that Betts failed to provide competent, relevant, and material evidence outside the record and that his alibi claim therefore was barred by the doctrine of res judicata.
>
> ***
>
> [*P25] Res judicata is a bar to claims in a petition for postconviction relief. *State v. Reynolds* (1997), 79 Ohio St.3d 158, 161, 1997 Ohio 304, 679 N.E.2d 1131.

"Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. An exception to the res judicata bar in a postconviction proceeding exists, however, when a petitioner presents competent, relevant, and material evidence outside the record that was not in existence and available to the petitioner in time to support the direct appeal. *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362.

\*\*\*

[\*31] On this record, the trial court did not err in finding the affidavits not credible.  Consequently, Betts failed to provide competent, relevant, and material evidence outside the record.

Doc. 6-2, Exhibit 26, pp. 100-01, ¶¶ 24-25, 31.  Finally, r*es judicata* is an adequate and independent state grounds for precluding federal habeas review. *Williams v. Bagley*, 380 F.3d at 967-968*; see also Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (citing *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994)) (holding that *res judicata* precludes post-conviction relief to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).

Since the first three prongs of *Maupin* have been met, under the fourth *Maupin* prong, the issue is whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin,* 785 F.2d at 138.  Thus, to overcome the procedural default, Betts must demonstrate cause for the default and that actual prejudice resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

Betts does not specifically argue cause or prejudice for his procedural default.  Further, Betts has not demonstrated prejudice nor has he demonstrated that the procedural default should be overcome on the ground that there will be a fundamental miscarriage of justice if his claim is

not heard, i.e., that he is actually innocent.  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) ("A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'") (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  To be credible, a claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).  The Supreme Court recently underscored the fact that, "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schlup*, 513 U.S. at 329) (emphasis supplied).

To the extent that Betts relies upon the three affidavits that he submitted in connection with his post-conviction petition[48] to demonstrate actual innocence, those affidavits do not establish a credible claim of actual innocence such that this Court should place Betts's case in the rare category of cases constituting a miscarriage of justice. Among other items that detract from the credibility and reliability of the affidavits are various items noted by the state court.  For example, there are inconsistencies between the affidavits (Doc. 6-2, Exhibit 26, pp. 99-100, ¶¶ 17-23), Betts's own affidavit is self-serving (Doc. 6-2, Exhibit 26, p. 101, ¶ 30, n. 3) and one of the affidavits was signed by Jessica Randleman who did not appear at the second trial notwithstanding the issuance of a subpoena and a bench warrant (Doc. 6-2, Exhibit 26, p. 99, ¶ 17, n. 1).

---

[48] Betts submitted affidavits signed by himself, Jessica Randleman (the mother of his children), and Fernando Taylor (a friend).  Doc. 6-2, Exhibit 26, p. 101, ¶ 30.

Finally, Betts asserts that there was no procedural default because his claims were based on evidence outside the record and suggests that the state court therefore misapplied the doctrine of *res judicata*.  Doc. 10, pp. 28-29 (relying on *Richey v. Bradshaw*, 498 F.3d 344, 359-60 (6th Cir. 2007) and *Jalowiec v. Bradshaw*, 2011 U.S. App. LEXIS 23682, * 21-22 (6th Cir. 2011). However, the state court found that "Betts failed to provide competent, relevant, and material evidence outside the record and that his alibi claim therefore was barred by the doctrine of res judicata." Doc. 6-2, Exhibit 26, pp. 100-01, ¶¶ 24, 31.  Betts has not shown that the state court's determination in this regard was erroneous.  Thus, his claim that *res judicata* is inapplicable is unpersuasive.  However, even if  his claim is not procedurally defaulted, as discussed more fully below, Betts has failed to demonstrate that the state court's determination regarding his ineffective assistance of counsel claim was contrary to or an unreasonable application of *Strickland.*

Since Betts is unable to overcome the procedural default, Ground Thirteen should be procedurally defaulted and barred from federal habeas review.  Alternatively, even if Betts has not procedurally defaulted Ground Thirteen, as discussed more fully below, Ground Thirteen is without merit.

### b.  Ground Thirteen is without merit

Betts argues that the state court's determination "that trial counsel made a 'strategic' decision to not investigate and present the alibi and not call petitioner to testify could not have been 'reasonable' and counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution."  Doc. 1, p. 12.  He asserts that "this is not a case where the evidence is overwhelming.  Had counsel properly investigated the alibi and presented the testimony

contained in the affidavits filed in state post conviction, there is a reasonable probability of a different outcome."  Doc. 10, p. 30.

To establish that his attorney was constitutionally ineffective, Betts must demonstrate that (1) his attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, Betts must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.

To satisfy the second, "prejudice," prong of the *Strickland* test, Betts must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

To the extent that his claim has not been procedurally defaulted, this Court must give deference to the state court's adjudication.  *Perkins v. McKee*, 411 Fed. App'x. 822, 828 (6th Cir. 2011).  As indicated in *Strickland*, "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying *a*

*heavy measure of deference* to counsel's judgments." *Strickland*, 466 U.S. at 691 (emphasis

supplied).   Further, the Supreme Court recently emphasized the double layer of deference that

federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement. . . . An ineffective-assistance claim can function as a way to escape
> rules of waiver and forfeiture and raise issues not presented at trial, and so the
> *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial
> inquiry" threaten the integrity of the very adversary process the right to counsel is
> meant to serve. . . . Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Richter,* 131 S. Ct. at 786-88.

In addressing Betts's claim, the Eighth District Court of Appeals correctly recognized

that *Strickland* governs claims of ineffective assistance of counsel.  Doc. 6-2, Exhibit 26, p. 10, ¶

31.  In finding that Betts had failed to demonstrate that his counsel was constitutionally

ineffective, the Eighth District Court of Appeals stated, in relevant part:

> [*P32] Betts's claim of ineffective assistance of counsel was based, in part, on
> counsel's alleged failure to investigate his alleged alibi. As already set forth, the
> affidavits from the alibi witnesses were conflicting and not credible. Betts
> therefore failed to demonstrate that his counsel substantially violated any essential
> duties owed to him and that he was materially prejudiced by counsel's
> performance.

Doc 6-2, Exhibit 26, p. 101, ¶ 32.

Betts relies upon three Sixth Circuit cases to support his claim that "it is objectively

unreasonable to not interview key defense witnesses."  Doc. 10, pp. 30-31 (relying on

*Poindexter*, 301 Fed. Appx. 522 (6th Cir. 2008); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir.

2005); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004).  While Betts points to Sixth

Circuit cases which may "offer insight on the reasonableness of the state court's application of *Strickland*," those "decisions are not controlling under AEDPA." *Poindexter*, 301 Fed. Appx. at 528 (citing *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) for the proposition that "principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings."). Notwithstanding the cases relied upon by Betts, in light of the double layer of deference afforded state courts in reviewing *Strickland* claims under AEDPA and in light of the lack of credibility in and inconsistencies between the affidavits relied upon by Betts to show deficient performance on the part of his trial counsel (Doc. 6-2, Exhibit 26, p. 100, ¶¶ 22-23), Betts has failed to demonstrate that, under the circumstances, the state court unreasonably applied *Strickland* when it determined that Betts "failed to demonstrate that his counsel substantially violated any essential duties owed to him." (*Strickland's* first prong). Doc. 6-2, Exhibit 26, p. 101, ¶ 32.

Even if Betts could demonstrate that trial counsel's performance was deficient, in light of the inconsistencies between the affidavits and the other evidence presented to the jury, including eyewitness testimony and fingerprint evidence linking Betts to the crime, Betts has failed to demonstrate that there is a reasonable probability that, but for his trial counsel's allegedly deficient performance, the result of the proceeding would have been different.

Betts appears to argue that the state court's decision under the prejudice prong of *Strickland* is faulty on the ground that it improperly relied upon its own credibility determination of the witnesses. Doc. 10, pp. 29-30. Betts then proceeds to state in a conclusory manner that there remains a reasonable probability of a different outcome based on the three affidavits. Doc. 10, pp. 29-30. In support of his argument, Betts relies in part on *Ramonez v. Berghuis,* 490 F.3d 482 (6th Cir. 2007). The Sixth Circuit in *Ramonez* indicates that the *Strickland* prejudice prong

is a mixed question of law and fact and thus suggests that the state court's credibility

determination may not be entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

490 F.3d at 491.  Here, the state court did not simply make a blanket assessment of the

credibility of the potential witnesses but considered that the affidavits contained multiple

inconsistencies.  For example, Betts states in his affidavit that he went to "'Daily's' Food Mart'"

for "snacks and beverages."  Doc. 6-2, Exhibit 26, p. 100, ¶ 18; Doc. 6-2, Exhibit 13, p. 18, ¶ 7.

Betts makes no mention of going to a store with Taylor, no mention of going to a store with

another individual[49] and no mention of Taylor.[50]  Doc. 6-2, Exhibit 26, p. 100, ¶23; Doc. 6-2,

Exhibit 13, p. 18, ¶ 7.   Also, Betts states that, on his way to the store, he ran into an

acquaintance working on a car but continued on his way when he learned the car was stolen.

Doc. 6-2, Exhibit 26, p. 100, ¶23; Doc. 6-2, Exhibit 13, pp. 18-19, ¶¶ 7-8.   In contrast, Taylor

indicates that he and Betts went to "a convenience store" together for beer and wine. Doc. 6-2,

Exhibit 26, p. 100, ¶ 20; Doc. 6-2, Exhibit 16, p. 34, ¶7.  Further, Taylor states that, after

returning from the store with drinks, he and Betts left the party in search of marijuana at

"Daily's" and, in doing so, came upon individuals stripping a car.  Doc. 6-2, Exhibit 26, p. 100,

¶¶ 21, 23; Doc. 6-2, Exhibit 16, pp. 34-35, ¶¶ 7-9.  Further, the state court considered the

affidavits against the backdrop of prior statements.  For example, while Randleman states in her

affidavit that she dropped Betts at a friend's house at approximately 9:00 p.m., she had not

mentioned this fact before, including during the first trial when she testified or in her written

---

[49] As noted below, Betts does mention running into an acquaintance on his way to the store but does not indicate that he went to the store with that individual or that that individual was at the party.  Doc. 6-2, Exhibit 13, pp. 18-19.

[50] To the extent that Betts might claim that he did not mention Taylor in the affidavit because he did not know Taylor, Taylor's affidavit states "I have known Jason Betts for many years and started regularly hanging out with him in 2000."  *See* Taylor's Affidavit, Doc. 6-2, Exhibit 16, p. 34, ¶ 1.

statement to the police.[51]  Doc. 6-2, Exhibit 18, p. 17, ¶ 17; Doc. 6-2, Exhibit 26, p. 100, ¶ 22.
Even though subpoenaed to testify in the second trial, Randleman did not appear.  Doc. 6-2,
Exhibit 26, p. 100, ¶ 22.

Further, even if, in connection with Betts's claim in Ground Thirteen, the state court's
credibility determination is not entitled to a presumption of correctness under 2254(e)(1),
*Ramonez* does not indicate or suggest that the state court's finding under the prejudice prong of
*Strickland* is not entitled to deference under AEDPA Here, while Betts states in a conclusory
fashion that, "[t]here is in this case a reasonable probability of a different outcome given the
affidavits provided in state post conviction" and "[c]ertainly, one can not be confident in the
verdict," Doc. 10, p. 29, he still has not demonstrated how, in light of the inconsistencies
between the affidavits and the other evidence presented to the jury, including eyewitness
testimony and fingerprint evidence linking Betts to the crime, there is a reasonable probability
that, but for his trial counsel's allegedly deficient performance, the result of the proceeding
would have been different.  Nor has he demonstrated that the state court unreasonably applied
the clearly established federal law as enunciated in *Strickland* when it determined that Betts
"failed to demonstrate that . . .  he was materially prejudiced by counsel's performance."
(*Strickland's* second prong).  Doc. 6-2, Exhibit 26, p. 101, ¶ 32.

Since Betts has not demonstrated that the state court's determination that trial counsel
was not constitutionally ineffective is "so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility for fairminded
disagreement,"  *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011)
(quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011), Betts's claim for

---

[51] Betts does not assert that Randleman included this fact in her statement to the police.

federal habeas relief under Ground Thirteen, if not procedurally defaulted, is without merit and should be denied.

### IV.    Conclusion and Recommendation

For the reasons stated herein, Grounds One through Thirteen are procedurally defaulted, are not cognizable, and/or are without merit.  Accordingly, the undersigned recommends that Betts's Petition for writ of habeas corpus (Doc. 1) be **DENIED**.

Dated: December 3, 2013

_Kathleen B. Burke_
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).