UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON BETTS, | ) | CASE NO. 1:11-cv-01107 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER AND DECISION** |
| TERRY A. TIBBALS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter appears before the Court on Petitioner Jason Betts' objections to the Magistrate Judge's Report and Recommendation ("the R & R") filed on December 3, 2013. (Doc. 14). For the following reasons, Betts' objections are DENIED, and the Court ADOPTS the Magistrate Judge's Report. (Doc. 11).

The R & R adequately states the procedural background of this case. Betts has demonstrated no error in that background, so the Court will not reiterate that section herein.

I. **FACTUAL BACKGROUND**

Betts has challenged some of the facts, which the Court will address. The Ohio Eighth District Court of Appeals summarized the facts underlying Betts' conviction as follows:

> [P4]  A second trial to a death-qualified jury commenced on June 12, 2006. The state's evidence demonstrated that in the weeks preceding his death, the decedent drove a gold Buick Riviera with distinctive specialty "20 inch Polo" rims. At this time, he was also helping his friend Jeffrey Williams remodel Williams' mother's house.
>
> [P5]  On October 8, 2002, Reyes left his vehicle on Cantor Avenue and went with Williams to meet friends at a bar. Later that night, Reyes was driven back to his car. Trisha Smith and Tina Maynard spoke to Reyes. After a few minutes, Tina observed someone walking in a nearby alley. Reyes said, "Oh shit," and fled. The individual chased Reyes. Reyes slipped and fell and the other man caught Reyes

by the back of the shirt, took out a gun and shot Reyes, killing him. Maynard then observed a man drive away in Reyes' car.

[P6] Smith described the assailant as a dark complexioned African-American male, approximately 5'6" or 5'5", with dread locks or braids. Police recovered a 9 mm shell casing from the scene. A few hours later, police recovered Reyes' car while responding to a call that an automobile was being stripped on Parkview Avenue. The vehicle was missing both passenger side tires and the wheels on the driver's side appeared to be replacement wheels. The distinctive Polo rims had been removed. Police obtained fingerprints from the right front fender, three exterior windows and a CD case inside the car.

[P7] Smith believed that she saw the man again at Reyes' wake. In the ensuing weeks, she looked at approximately twenty photographs for police but could not identify the assailant.

[P8] On October 16, 2002, Jeffrey Williams received a telephone call from Norman Pomales. Following this phone call, Williams contacted investigators and investigators in turn identified a green Pontiac automobile owned by Randleman.

[P9] By April 2003, police linked two of the fingerprints recovered from the right front fender of Reyes' car to defendant. The next month, Trisha Smith was shown a six-person photo array and indicated that defendant looked like the person but she could not be sure. Following a second photo array in April 2004, Smith identified defendant. That same month, Maynard identified defendant from a different six-person photo array but she stated that she could not be sure. At trial, Smith also identified defendant as the assailant.

[P10] In March 2003, Houston Foster turned over to police a 9 mm weapon he had found in the outdoor grill at his home located at 1371 East 185th Street. Police later determined that defendant had been arrested at 1371 East 185th Street in March 2003. In May 2004, police determined that a Browning 9 mm weapon found in the grill at Foster's home fired the 9 mm casing found at the crime scene and that a live round found within the Browning 9 mm was the same make and manufacture of the casing found at the crime scene.

[P11] Police located defendant hiding in a closet at his parents' home. He denied ever seeing Reyes or Reyes' car. Defendant stated that Randleman is his girlfriend.

[P12] Defendant presented the testimony of Solomon Fulero, Ph.D. who testified that eye witness memories can be tainted by post-event information, that memories fade over time, that brief eye witness observations are less accurate than observations involving longer exposure times, and that various factors including the presence of weapons and other stressful factors tend to render eye witness observations less accurate. In addition, identifications of individuals from

a different race tend to be less accurate as same-race identifications. Finally, Fulero opined that the presentation of a six-person photo array yields less reliable identifications than a sequential presentation of photos.

[P13]  The defense also presented the testimony of Officer Edward Csoltko who arrested defendant at 1371 East 185th Street. According to Officer Csoltko, he reported to his dispatcher that the subject he was chasing was "possibly armed," and the report does not mention a gun but he believed that he did observe defendant to be armed during the pursuit. He conceded, however, that it was possible that a second individual involved in this incident could have been the person he observed with a weapon.

*State of Ohio v. Betts*, 2007 Ohio App. LEXIS 4873 (Ohio Ct. App. Oct. 18, 2007); *see also* Doc. 6-1, Exhibit 1, pp. 1-9.

## II.  STANDARD OF REVIEW

If a party files written objections to a magistrate judge's report and recommendation, a judge must perform a de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.  § 636(b)(1).

## III.  LAW AND ANALYSIS

Because Betts filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 as amended by the *Antiterrorism and Effective Death Penalty Act of 1996* (AEDPA), the AEDPA governs this Court's review of the instant case.  *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).  The relevant portion of the habeas statute provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).  However, if a claim has not been adjudicated on the merits in a state court proceeding, "and has not been procedurally defaulted, we look at the claim de novo rather than through the deferential lens of AEDPA."  *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005).

### A.  Betts' AEDPA Objection

First, Betts objects to the fact that the Magistrate Judge failed to address Betts' constitutional challenge to the AEDPA.  Betts argues that the AEDPA is unconstitutional because it "improperly and unconstitutionally restricts a federal court's ability to remedy federal Constitutional violations."  (Doc. 14, p. 4).   For the following reasons, this Court concludes that the Magistrate Judge did not err in failing to address Betts' AEDPA argument.

Betts makes this argument while citing to the dissenting opinion in *Evans v. Thompson*. *See Evans v. Thompson*, 524 F.3d 1 (1st Cir. 2008).  A Sixth Circuit court has never concluded that the AEDPA is unconstitutional.  Moreover, there is universal agreement among each circuit that AEDPA deference is constitutional.  *See Phelps v. Berghuis*, 2011 WL2693353 at *4 (E.D. Mich. 2011) ("Furthermore, no circuit court, on behalf of the entire circuit, has taken the position that AEDPA deference is unconstitutional.  'Thus, there is no debate amongst the circuit courts.'  This [c]ourt concludes that section 2254(d) does not violate the separation of powers.") (quoting *Bonomelli v. Dinwiddie*, 399 F. Appx 384, 397 (10th Cir. 2010)).

Moreover, Betts' current counsel has made this exact same argument before the Sixth Circuit in the past but to no avail. *See Andera v. Tibbals*, 2012 WL 4955290 at *1 (N.D. Ohio 2012) ("This [c]ourt declines to find the AEDPA unconstitutional."). The Court finds no reason to depart from those prior, universally-consistent rulings.

Betts' objection to the Magistrate Judge's failure to address his AEDPA claim is without merit and is thus OVERRULED.

### B. Betts' Objection to Resolution of his First Claim

In his first claim for relief, Betts argues that his Sixth and Fourteenth Amendment rights "were violated when Jessica Randleman's testimony from the previous trial was used in the second trial when her unavailability was not proven by sworn testimony and over the objection of the petitioner." This argument is without merit. (Doc. 14, p. 8). Betts claims that the state trial and appellate courts violated the Sixth Amendment's Confrontation Clause, which states that the accused in a criminal prosecution enjoys the right "to be confronted with the witnesses against him." U.S. Const. Amend. VI. Moreover, along Betts' line of reasoning, such misapplication of federal constitutional law by the state courts results in "a fundamental miscarriage of justice and a violation of due process." *Id*. For the following reasons, this Court overrules Betts' objection.

Betts is entitled to relief for any claims adjudicated on the merits in the state court if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has elaborated: "In order for a federal court to find a state court's application of [the U.S. Supreme Court's] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous…The state court's application must have been 'objectively

5

unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Lockyear v. Andrade*, 538 U.S. 63, 75 (2003); *Williams v. Taylor*, 529 U.S. 362, 409 (2000)).  Moreover, the Sixth Circuit has held:

> [A] decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'

*Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams*, 529 U.S. at 405).

The Federal Rules of Evidence dictate that:

> A declarant is considered to be unavailable as a witness if the declarant…is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure…the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(1) or (6).

Fed. R. Evid. 804(a)(5)(A).  Under the hearsay exception of Fed. R. Evid. 804, testimony is not excluded by the rule against hearsay if the testimony:

> …was given as a witness at a trial, hearing, or lawful deposition, whether given during the *current proceeding or a different one*; and is now offered against a party who had…an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1)(A) and (B) (emphasis added).  Moreover, "[h]abeas relief is only appropriate when the admission of constitutionally inadmissible evidence was not harmless." *Brumley v. Wingard*, 269 F.3d 629, 644 (6th Cir. 2001).  "To conclude that the admission was not harmless," the Court "must determine that the state-court error had a substantial and injurious effect or influence in determining the jury's verdict."  *Id*. at 644-45 (citing *Hill v. Brigano*, 199 F.3d 833, 846-47 (6th Cir. 1999), *cert. denied*, 528 U.S. 1134; *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999), *cert. denied*, 528 U.S. 1120).

Herein, Betts claims error in the state court's refusal to require *sworn* testimony regarding the state's efforts to procure Randleman's testimony.  Betts is correct that the prosecution must make a "good faith effort" to obtain a witness's presence at trial before the witness can be determined to be unavailable for the purposes of the Confrontation Clause.  *Hardy v. Cross*, 132 S.Ct. 490, 493 (2011).  However, as the R&R properly concludes, Betts has identified no federal law that requires this showing to be made through sworn testimony.   Accordingly, he has failed to show any unreasonable application of federal law with respect to this claim.

### C.  Betts' Objection To Resolution of Second Claim

Betts objected to the Magistrate Judge's findings that no *Batson* violation occurred at the state court level.  Betts claims that the state used seven peremptory challenges between his two trials to strike African-American jurors in a discriminatory manner.  Moreover, he concludes that the state courts applied U.S. Supreme Court precedent from *Batson* unreasonably under 28 U.S.C. § 2254(d)(1).  For the following reasons, this Court concludes that the Magistrate Judge did not err in finding that there was no *Batson* violation.

The U.S. Supreme Court in *Batson* concluded that it is a violation of the Equal Protection Clause under the Fourteenth Amendment to challenge jury members solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  The *Batson* court established a three-part test to analyze such discriminatory peremptory challenges.  First, the defendant must make a "prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.  *Id.* at 96. In order to make a prima facie showing of discrimination, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."  *Id*.  (quoting *Castaneda*

7

*v. Parteda*, 430 U.S. 482, 494 (1977)). Furthermore, "the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection process that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 476 U.S. at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). The defendant must also show "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96.

Second, the burden shifts to the prosecutor to make a neutral explanation for his or her peremptory challenges, and such an explanation must specifically relate to "the particular case to be tried." *Id*. at 97-98. Finally, "the trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id*. at 98. A *Batson* claim presents a mixed question of law and fact. *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

In this Case, Betts made a *Batson* objection to the peremptory challenge of a specific African-American juror, Ms. Jeffries. The state offered a race-neutral explanation for its challenges, which the state trial court analyzed and accepted. The state's explanation for its challenge of the specific juror in dispute was that the juror stated three separate times that she did not want to be at the trial and could not bring herself to "sit in judgment of another." (Doc. 6-1, Exhibit 9, pp. 202-203).

The trial court's determination of whether the state's challenges were discriminatory was a factual determination, which would require Betts to rebut the trial court's finding with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Betts failed to show any clear and convincing evidence which would prove the trial court's decision to be incorrect. In fact, Betts has offered no argument other than a conclusory statement that the stated reason was not

8

credible. In so doing, he ignores that the trial record firmly establishes that Ms. Jeffries stated on three occasions that she did not want to serve as a juror, without any underlying reason, which stood in stark contrast to other jurors who offered reasons for requesting to be excused including vacations and medical appointments.

Betts also claims error in the fact that the court of appeals, in a minor portion of its appellate review, noted that an African-American juror remained on the panel. Betts asserts that this Circuit has made it clear that such a fact should not be taken into consideration in a *Batson* review. However, as detailed above, the trial court did not rely upon such a fact, and even had it been considered, Betts has failed to demonstrate error in the conclusion that the state offered a credible, race-neutral reason for its challenge. Thus, Betts' objection to the Magistrate Judge's finding on his second ground for relief is without merit and is therefore OVERRULED.

### A. Betts' Objection To Resolution of Third Claim

Betts objected to the Magistrate Judge's finding that the state court did not make an unreasonable determination of the facts in light of the evidence. In his objection to the Magistrate Judge's finding on his third claim, Betts argues that the state court's "factual determination is an unreasonable determination of the facts under [28 U.S.C.] 2254(d)(2)." (Doc. 14, p. 13). He argues that the pretrial eyewitness identification procedure using a photo array to identify Betts was unnecessarily suggestive. (Doc. 14, p.13) (citing *Moore v. Illinois*, 434 U.S. 220 (1977)). For the following reasons, the Court concludes that the Magistrate Judge did not err in making these findings.

The AEDPA dictates that a federal habeas petitioner may challenge "the factual basis for a prior state-court decision rejecting a claim," and "the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the

9

evidence presented in the State court proceeding.'" *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013) (quoting 28 U.S.C. § 2254(d)(1)). After making such a challenge, the petitioner has the burden of proving "by clear and convincing evidence" that the state court's findings were incorrect. 28 U.S.C. § 2254(e)(1). The United States Supreme Court has stated as recently as 2013 that:

> State courts are adequate forums for the vindication of federal rights. 'The States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the U.S. Supreme Court] ha[s] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'

*Burt*, 134 S.Ct. at 15 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). Moreover, "[t]his principle applies to claimed violations of constitutional, as well as statutory, rights." *Id*. (citing *Trainor v. Hernandez*, 431 U.S. 434, 443 (1977)). Because of this presumption of the state courts' competency, the "AEDPA requires 'a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error … beyond any possibility for fair-minded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011)).

Betts contends that "[o]ne need only look at the photo array to see that petitioner is [the] only one with braids and a dark complexion." (Doc. 14, p. 13).[1] Betts argues that he is the only person in the six-person photo array depicted in a manner consistent with eyewitness Trisha Smith's testimony, i.e., a dark skinned, short, African-American male with braids. (Doc. 10, p. 16). Betts further argues that the other people in the photo array are tall and of lighter complexions with shorter braids; thus, implicating him through unnecessarily suggestive means. (Doc. 10, p. 15). However, Detective Beamon used an "either/or description of the hairstyle" and all six men in the photo array had braids of some type. (Doc. 11, p. 32). Beamon further

---

[1] In his prior briefing, Betts asserted that he was "medium complexion with short braids." (Doc. 10, p. 15).

10

testified that the complexions of the six men in the array ranged from medium to dark. Thus, Betts conclusory statement that the array was unreasonably suggestive falls short of his burden to demonstrate by clear and convincing evidence that the state court engaged in incorrect fact finding.

Betts' objection to the Magistrate Judge's conclusion that the state court did not make an unreasonable factual determination is without merit and is therefore OVERRULED.

### B. Betts' Objection to the Magistrate Judge's Finding that There Was No Prosecutorial Misconduct (Claims 4 & 9).

Since Betts' fourth and ninth claims both argue prosecutorial misconduct, this Court will address them together. Betts objected to the Magistrate Judge's finding that Betts' claim of prosecutorial misconduct was without merit and that his trial was properly retried. Betts argues that his Fourteenth Amendment rights have been violated under the Double Jeopardy Clause of the Constitution, since prosecutorial misconduct should have barred his retrial after the hung jury. (Doc. 1, p. 8; Doc. 14, p. 15). Furthermore, Betts argues that the state court's "findings to the contrary, without an evidentiary hearing, are an unreasonable determination of the facts and/or an unreasonable application of federal constitutional law." (Doc. 14, p. 16).

In Betts' fourth claim, he argues that the prosecutor engaged in misconduct by telling the jury that Betts:

> …hid a gun while being chased by the police 'that could tie him to a lot of stuff' when the prosecutor knew such statement would not come into evidence and told the jury in opening and closing statements that the victim's 'rims' were seen on the petitioner's car several days after the murder when he knew such evidence would not and did not come into evidence.

(Doc. 11, p. 12).

11

Moreover, in Betts' ninth claim, he again argues that there was prosecutorial misconduct:

> …when the prosecutor vouched for the credibility of the sole eyewitness, gave a personal opinion to rebut an expert on eyewitness identification, disparaged the petitioner, referred to evidence excluded by the trial court, misstated facts and argued facts outside the record.

(Doc. 11, p. 13). For the following reasons, this Court concludes that the Magistrate Judge was correct in finding that no prosecutorial misconduct occurred and thus retrial was appropriate.

"The Double Jeopardy Clause of The Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. " *Oregon v. Kennedy*, 456 U.S. 667. 671 (1982). Moreover, "the appropriate standard of review for such a claim [of prosecutorial misconduct] is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "[T]he touchstone of due process analysis in cases of alleged misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

The Sixth Circuit uses a well-established test to determine whether prosecutorial misconduct occurred in any given case. First, the court must determine "whether the challenged statements were indeed improper." *Boyle v. Million*, 201 F.3d 711, 718 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994); *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)). If the court makes a finding of impropriety, then the court must determine whether the challenged statements were "flagrant and warrant reversal." *Id*. In order to determine flagrancy, the court must examine four factors:

> 1) whether the statements tended to mislead the jury or prejudice the defendant;
> 2) whether the statements were isolated or among a series of improper statements;
> 3) whether the statements were deliberately or accidentally before the jury; and
> 4) the total strength of the evidence against the accused.

*Id*. *See also Kirksey v. Clipper*, 2014 WL 1117834 at *1 (N.D. Ohio 2014).

Regarding the statements and actions of the prosecutor in this case, the trial court made no determination that the prosecutor behaved improperly, and the state court of appeals affirmed that decision. Making such a finding, the trial court did not believe that Betts' case should be barred from retrial under the Double Jeopardy Clause. Since these were factual determinations made by the state courts, this Court must give deference to them under 28 U.S.C. § 2254(d)(2) and AEDPA.

In support of his objection, Betts again makes conclusory statements to support his argument that the prosecutor's remarks were intentional. He specifies no portion of the record that supports his claims and therefore, falls woefully short of showing error in the state court's factual findings. For example, Betts states "The prosecutor also told the jury, in opening and closing, that the victim's car rims were seen on Petitioner's car several days after the murder. The prosecutor knew this statement would not come into evidence because the person with alleged first-hand knowledge of this 'evidence' would not and did not testify for the State." Betts cites to nothing in the record to support this conclusion and therefore has failed to meet his burden. Betts' objections to the Magistrate Judge's finding that there was no prosecutorial misconduct are without merit and are thus OVERRULED.

### C. Betts' Objections to the Resolution of his Fifth and Sixth Claims

In his objections, Betts argues that his fifth and sixth claims are related to each other. Thus, this Court will treat them together. These claims concern improper jury instructions on the element of aggravated robbery, Betts objected to the Magistrate Judge's finding that the state court's jury instructions were proper and that Betts' claim is without merit. Betts argues that such an "erroneous jury instruction" denied him his due process and "violated [his] Fifth, Sixth,

13

and Fourteenth Amendment" rights. (Doc. 14, p. 18). While the R&R devotes more than four pages to analyzing these claims, Betts raises no specific objection to that analysis. Instead, he rather states that error has occurred. As Betts has failed to identify error in the R&R, his objections are OVERRULED.

### D. Betts' Objections to the Resolution of his Seventh and Eighth Claims

Since Betts' seventh and eighth claims both involve insufficiency of evidence, this Court will treat them together. In claim seven, Betts argues that there is insufficient evidence to convict him of aggravated murder and aggravated robbery and that the state court unreasonably applied federal law. In claim eight, Betts further argues that there was insufficient evidence to prove that he was the shooter based on improper use of testimony from Randleman and improper identification methods used with Smith. In claim eight, Betts also argues that the evidence used against him was circumstantial.

Moreover, Betts states that the Magistrate Judge has given "double deference" to the state court by once again making an unreasonable determination of the facts. Betts claims that the state court unreasonably applied the U.S. Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307 (1979) while also using the continuous transaction test from *State v. Thomas*, 106 Ohio St.3d 133 (2006), which he claims the Ohio Supreme Court rejected.

The U.S. Supreme Court in *Jackson* stated that:

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support finding of guilt beyond a reasonable doubt. But this inquiry does not require a court 'to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the

14

> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 318-19 (1979) (quoting *Woodby v. INS*, 385 U.S. 483, 486 (1966)) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). In reviewing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Circumstantial evidence may be sufficient to support a conviction. *U.S. v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984).

Betts ostensibly claims that the R&R failed to identify an improper stacking of inferences that led to his conviction. In so doing, Betts ignores that the individual inferences drawn from separate pieces of circumstantial evidence were entirely proper. For example, the state presented evidence of Betts' fingerprint on the victim's car. No inference need be drawn from that evidence – it firmly established that Betts had touched the vehicle, which flew in the face of his assertion that he had never seen the car. Similarly, the jurors were well within their right to infer that the gun could be tied to Betts when it was found at a location where he had previously been arrested. Given that Betts' fingerprint tied him to the car and his prior arrest tied him to the location of the murder weapon, Betts' argument regarding the sufficiency of the evidence quickly unravels. Once the state offered eyewitness testimony, his argument vanishes entirely – even taking into consideration Betts' assertions that such testimony was "weak."

For these reasons, Betts' objections relating to the Magistrate Judge's findings on his seventh and eighth claims are without merit and are thus OVERRULED.

### E. Betts' Objections to the Resolution of his Tenth, Eleventh, and Twelfth Claims

Since Betts' tenth, eleventh, and twelfth claims were all deemed to be not cognizable by the Magistrate Judge, this Court will address them together. Betts' claims, in part, are as follows:

> (10) The doctrine of res judicata did not bar the petitioner's claims in state post conviction and such conclusions were not supported by the record and violated the Fourteenth Amendment of the federal Constitution….
>
> (11) An evidentiary hearing must be conducted when three affidavits with evidence dehors the record support the relief sought and the failure to conduct such a hearing violated Due Process under the Fourteenth Amendment of the federal Constitution.
>
> (12) There must be guidelines or a test for state courts to use in deciding whether to allow discovery in state post conviction[.] [O]therwise the unbridled discretion violates the Fourteenth Amendment and is not subject to review….

(Doc. 11, p. 13). Betts objected to the Magistrate Judge's finding that all three claims are not cognizable. For the following reasons, this Court agrees with the Magistrate Judge's conclusion.

The Sixth Circuit has established that attacks on state post-conviction proceedings, rather than on the underlying conviction, are not cognizable claims. *See Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986) ("We decline to allow the scope of the writ to reach this second tier of complaints about deficiencies in state post-conviction proceedings."). Betts does not address this authority in any manner in his objection. For that matter, Betts summarily states that these claims are cognizable with no further argument or legal support. As Betts has failed to raise any argument that the R&R's resolution of these claims was in error, his objection is OVERRULED.

### F. Betts' Objection to the Resolution of his Thirteenth Claim

Finally, Betts objected to the Magistrate Judge's conclusion that his thirteenth claim was procedurally defaulted. Betts' objection centers on "the failure of defense counsel to properly investigate an alibi defense." (Doc. 14, p. 23). For the following reasons, this Court concludes

16

that the Magistrate Judge did not err in concluding that Betts' thirteenth claim was procedurally defaulted, and thus, federal habeas review is precluded because res judicata barred his post-conviction claims.

The Sixth Circuit has established a four-prong test to analyze whether a "petitioner's failure to observe a state procedural rule" results in a habeas claim being precluded. *Maupin v. Smith*, 728 F.2d 135, 138 (6th Cir.1986). The court's first three inquiries in the *Maupin* four-prong test are (1) whether "there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule"; (2) "whether the state courts actually enforced the state procedural sanction"; and (3) "whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id*. (citing *Wainwright v. Sykes*, 433 U.S. 72, 78 (1977); *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 149 (1979); *Melchoir v. Jago*, 723 F.2d 486, 490 (6th Cir. 1983); *Meeks v. Bergen*, 749 F.2d 322, 325 (6th Cir. 1984)).

If the first three inquiries yield affirmative results, then the burden is on the petitioner to overcome a procedural default and obtain relief by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Engle v. Isaac*, 456 U.S. 107, 129 (1982). The U.S. Supreme Court has explained specifically that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). "[T]he demands of comity and finality counsel against labeling alleged unawareness of the objection as a cause

17

for a procedural default." *Id*. *See also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). As this claim was procedurally defaulted, the deferential lens of AEDPA applies.

In this case, the first three prongs of the *Maupin* test were clearly met as the Magistrate Judge has already established. Betts has failed to demonstrate a legitimate cause for procedural default of this claim. He merely argues that, had his counsel investigated Betts' alibi defense and presented the testimony contained in affidavits filed in state post-conviction proceedings, the outcome of the trial might have been different. Moreover, Betts repeatedly contends that it was improper for anyone other than a jury to assess the credibility of the affidavits that were offered. In so doing, Betts ignores the analysis of the Magistrate Judge, which properly highlighted that Betts must show *prejudice* resulting from any alleged deficiency of his counsel. In so doing, Betts must demonstrate that the result of his proceeding would likely have been different. To review such a claim, *any* court must evaluate the alleged evidence that a defendant claims would have been presented but for ineffective assistance of counsel. Accordingly, both the state court and the Magistrate Judge properly reviewed the affidavits and properly concluded that they lacked any material evidentiary value.

For the foregoing reasons, Betts' objection to the Magistrate Judge's finding that his thirteenth claim was procedurally defaulted is without merit and is thus OVERRULED.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds no merit to the objections raised by Betts. Therefore, Betts' objections are OVERRULED. The Court ADOPTS the Report and Recommendation of Magistrate Judge Burke. (Doc. 11). The Petition for Habeas Corpus is DISMISSED.

The Court certifies, pursuant to 28 U.S.C. § 1915(A)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. *See* 28 U.S.C. §2253(c)(1)(A); Fed. R. App. P. 22(b).

IT IS SO ORDERED.


<u>September 24, 2014</u>  */s/ John R. Adams*
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT